1  HANS K. ASHBAUCHER          KIMBERLY L. STARR
   c/o Kimberly Starr          P.O. BOX 5692
2  P.O. BOX 5692               EUREKA, CA  95502
3  EUREKA, CA  95502           (707) 618-9185
   *Pro Se*                    *Pro Se*
4
   JOHNIE C. MILLER            MICHELLE HERNANDEZ
5  c/o ARCATA ENDEAVOR         P.O. BOX 896
6  501 9th STREET              ARCATA, CA  95518
   ARCATA, CA  95521           *Pro Se*
7  *Pro Se*

8  KRISTOFER JOHNSON
   2100 WESTERN AVENUE
9  ARCATA, CA  95521                    E-filing
   *Pro Se*
10

11

12              UNITED STATES DISTRICT COURT
13            NORTHERN DISTRICT OF CALIFORNIA
14              SAN FRANCISCO DIVISION
15                                                      EMC
16  HANS K. ASHBAUCHER ,       CV Case No. 08 — 2840
17  KIMBERLY L. STARR
    JOHNIE C. MILLER,
18  MICHELLE HERNANDEZ,
    KRISTOFER JOHNSON
19
20         Plaintiffs,
                              **COMPLAINT FOR DAMAGES
21  v.                        AND DECLARATORY AND
                              INJUNCTIVE RELIEF FOR
22  CITY OF ARCATA; MICHAEL HACKETT,   VIOLATIONS OF CIVIL RIGHTS**
    individually and as Arcata City Manager;   **(and commission of other wrongs)**
23  ARCATA POLICE DEPARTMENT;
24  CHIEF RANDY MENDOZA, individually and
     as Chief of the Arcata Police Department;
25  CAPTAIN TOM CHAPMAN,           **JURY TRIAL DEMANDED**
    OFFICER MARTINEZ,
26  OFFICER DRAKE GOODALL,  individually
27  and in their capacity as Officers of the Arcata
    Police Department; COUNTY OF
28  HUMBOLDT, a political subdivision of the
    State of California; HUMBOLDT COUNTY

                              1

SHERIFF'S DEPT.; Sheriff Gary Philp,
individually and as Humboldt County Sheriff;
SGT. BUIHNER, DEPUTY CHANDLER,
individually and as members of the Humboldt
County Sheriff's Department;
HUMBOLDT COUNTY CORRECTIONAL
FACILITY; HUMBOLDT STATE
UNIVERSITY POLICE DEPARTMENT;
CHIEF THOMAS DEWEY, LIEUTENANT
LYNNE SODERBERG, OFFICER RODNEY
DICKERSON, individually and as Officers of the
Police Department;
CALIFORNIA HIGHWAY PATROL;
CITY OF EUREKA;
EUREKA POLICE DEPARTMENT;
CITY OF FORTUNA;
FORTUNA POLICE DEPARTMENT;
and DOES 1-200, inclusive.

                    Defendants.

---

## A.   INTRODUCTION

1.      Plaintiffs are comprised of people who are homeless, temporarily sheltered, disabled, and low-income. Plaintiffs seek declaratory and injunctive relief, as well as compensatory and punitive damages, against the Defendant officers, government entities, and other officials and policymakers for violating their civil and Constitutional rights by discriminating against them for their homeless status, or perceived homeless statues, treating them like criminals for carrying out basic functions (primarily sleep) while homeless, unfairly targeting their participation in a  demonstration, stealing and depriving them of life-sustaining medications and other property, intentionally and/or negligently depriving them of medical attention, assaulting and battering during wrongful arrest, and subjecting them to intolerable custodial conditions.

2.      Plaintiffs, through a "People Project" encampment demonstration, aimed at exposing and discussing with the public the ongoing and total lack of sleeping space available for homeless people in the City of Arcata and surrounding areas, the criminalization of

1  homelessness, and the overall climate of hostility and harassment that continues to be both
2  created and perpetuated by local government agencies and police departments.

3  3.    Plaintiffs and other encampment participants also intended to both model and provide a
4  safe, albeit temporary, sleeping space on public land.

5  4.    People Project is an unincorporated association of Humboldt County residents,
6  sheltered and unsheltered, who work for the rights of poor and homeless people, and focus on
7  building self-determined dignified community through dialogue and action. People Project
8  began as a result of public forums on homelessness.

9  5.    The City of Arcata provides no shelter or safe place for homeless people to rest or
10  perform other life-sustaining activities. People Project sought, through the temporary
11  encampment demonstration, to connect with and raise awareness of caring community
12  members and generate dialogue, energy, and support for establishing a people-run, eco-friendly
13  campground.

14  6.    On April 25, 2007, Defendants disrupted and dismantled the People Project
15  encampment demonstration (that action by Defendants hereto referred to as "the raid"), falsely
16  arresting Plaintiffs and chilling the First Amendment rights of Plaintiffs and other
17  demonstration participants.

18  7.    Defendants deprived and continue to deprive Plaintiffs (and others) of sleep and of
19  freedom from fear of harassment.

20  8.    Defendants seized and obstinately refused to return Plaintiffs' demonstration signs and
21  their survival gear and personal belongings, including tarps, blankets, clothing, food, and
22  medication, leaving them without any protection from the cold, rainy weather and without
23  other property for survival.

24  9.    Because Arcata has proven itself to be deaf to all urgings by community to respect
25  homeless peoples' human rights and to cease from day and night harassment, intimidation, and
26  punishment of homeless people for performing or needing to perform life-sustaining activities,
27  and whereas the Defendants exhibit no intention of voluntarily changing such unconstitutional
28  pattern and practice, and Plaintiffs can exhaust no other options, Plaintiffs appeal to this court

3

1  to provide declaratory and injunctive relief regarding such discriminatory and inhumane

2  actions by Defendants.

3

4  ## JURISDICTION AND VENUE

5  10.    This Complaint is brought pursuant to 42 U.S.C. §§ 1983 and 1988 to vindicate rights

6  protected by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution

7  and by the analogous provisions of the California Constitution. Jurisdiction is founded on 42 U.S.C.

8  §§ 1331 and 1343(1), (2), (3) and (4), and the aforementioned statutory and constitutional provisions.

9  This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331 (in that it arises under

10  the Constitution of the United States); §1343(a)(3) (in that it is brought to redress deprivations, under

   color of state authority, of rights, privileges and immunities secured by the United States

11  Constitution); and under (a)(4) (in that it seeks to secure equitable relief under an Act of Congress,

12  specifically under 42 U.S.C. §1983) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and

13  2202.

14

15  11.    Venue is proper in that Plaintiffs reside within this district in Humboldt County, California,

   and all of the acts and/or omissions giving rise to this action occurred or will occur in this District.

16

17  12.    This lawsuit should be assigned to the San Francisco Division of this Court because the events

   or omissions giving rise to this lawsuit occurred or will occur in Humboldt County, California.

18

19  ## PARTIES

20  ### Plaintiffs

21  13.    Plaintiff HANS K. ASHBAUCHER ("ASHBAUCHER") is, and at all times relevant hereto

22  was, a citizen of the United States and an unsheltered homeless person residing in Humboldt County,

23  California.

24  14.    Plaintiff, KIMBERLY L. STARR ("STARR") is, and at all times relevant hereto was, a citizen

25  of the United States and an unsheltered homeless person residing in Humboldt County, California.

26  15.    Plaintiff JOHNIE C. MILLER ("MILLER") is, and at all times relevant hereto was, a citizen of

27  the United States and an unsheltered homeless person residing in Humboldt County, California.

28

4

16. Plaintiff MICHELLE HERNANDEZ ("HERNANDEZ") is, and at all times relevant hereto was, a citizen of the United States residing in Humboldt County, California. Plaintiff Hernandez vacillates between housed and homeless status; when she's able to find housing, it's temporary at best.

17. Plaintiff KRISTOFER JOHNSON ("JOHNSON") is, and at all times relevant hereto was, a citizen of the United States residing in Humboldt County, California.

## Defendants

18. Defendant CITY OF ARCATA is, and at all times relevant hereto was, a political subdivision of the State of California. The City of Arcata is a distinct political entity that has its own budget. Plaintiffs are informed and believe and thereon allege that Defendant City of Arcata coordinated the raid and ongoing harassment and deprivations which give rise to this Complaint, and that Defendant City of Arcata, at all relevant times, did and continues to engage in a pattern and practice that violates the rights of homeless people and creates and perpetuates a hostile environment to deprive homeless people of dignity and biological, life-sustaining necessities. Defendant City, its police department, policy makers, supervisory personnel and employees responsible for making and/or carrying out the acts giving rise to this Complaint, including the Defendants named in paragraphs 6 through 12, inclusive, are sometimes hereafter collectively referred to as "Defendant City of Arcata."

19. Defendant MICHAEL HACKETT ("HACKETT") is, and at all times relevant hereto was, the Arcata City Manager.

20. Defendant ARCATA POLICE DEPARTMENT ("APD") is, and at all times relevant hereto was, a division of the City of Arcata.

21. Defendant RANDY MENDOZA ("MENDOZA") is, and at all times relevant hereto was, the Chief of the Arcata Police Department, responsible for directing the operations and establishing the practices and policies of the Arcata Police Department and working under the supervision and direction of Defendant City of Arcata.

22. Defendant TOM CHAPMAN ("CHAPMAN") is, and at all times relevant hereto was, a captain employed by the Arcata Police Department and working under the supervision and direction of Defendant City of Arcata.

1    23.    Defendant ROBERT MARTINEZ ("MARTINEZ") is, and at all times relevant hereto
2    was, an officer employed by the Arcata Police Department and working under the supervision
3    and direction of Defendant City of Arcata.

4    24.    Defendant DRAKE GOODALL ("GOODALL") hereto was, at all times relevant, an
5    officer employed by the Arcata Police Department and working under the supervision and
6    direction of Defendant City of Arcata. Upon Plaintiffs' information and belief, Goodall is now
7    an officer employed by Eureka Police Department.

8    25.    Defendant COUNTY OF HUMBOLDT ("Defendant County") is, and at all times
9    relevant hereto was, a political subdivision of the State of California. Humboldt County is a
10    distinct political entity that has its own budget. Plaintiffs are informed and believe and thereon
11    allege that Defendant County did and continues to engage in a pattern and practice that violates
12    the rights of homeless people and creates and perpetuates a hostile environment to deprive
13    homeless people of dignity and biological, life-sustaining necessities. Defendant County, its
14    Sheriff's Department, policy makers, supervisory personnel and employees who are responsible
15    for Sheriff's officers' participation in the raid and for transport and jail custody conditions
16    imposed on Plaintiff arrested as a result of the raid, including the Defendants named in
17    paragraphs 21 through 26, inclusive, are sometimes hereafter collectively referred to as
18    "Defendant County."

19    26.    Defendant HUMBOLDT COUNTY SHERIFF'S DEPARTMENT ("HCSD") at all times
20    relevant hereto was, a division of Humboldt County.

21    27.    Defendant GARY PHILP ("Philp") is, and at all times relevant hereto was, the Sheriff of
22    Humboldt County, responsible for directing the operations and establishing the practices and
23    policies of the Humboldt County Sheriff's Department and the Humboldt County Correctional
24    Facility.

25    28.    Defendant PHIL BUIHNER ("BUIHNER ") is, and at all times relevant hereto was, a
26    sergeant employed by the Humboldt County Sheriff's Department and working under the
27    supervision and direction of Defendant County.

28

6

1  29. Defendant DEPUTY CHANDLER ("CHANDLER") is, and at all times relevant hereto was,
2  a deputy employed by the Humboldt County Sheriff's Department and working under the
3  supervision and direction of Defendant County.

4  30. Defendant HUMBOLDT COUNTY CORRECTIONAL FACILITY ("JAIL") is, and at all
5  times relevant hereto was, under the supervision and direction of the Defendant Humboldt
6  County Sheriff's Department's Custody Services Bureau (upon Plaintiff's information and
7  belief).

8  31.  Defendant HUMBOLDT STATE UNIVERSITY POLICE DEPARTMENT ("HSUPD") is,
9  and at all times relevant hereto was, a division of the State of California. Defendant HSUPD
10  participated in the raid and continuing other harassment and deprivations which give rise to this
11  Complaint, and Plaintiffs are informed and believe and thereon allege that Defendant HSUPD, at
12  all relevant times, did and continues to engage in a pattern and practice that violates the rights of
13  homeless people and creates and perpetuates a hostile environment to deprive homeless people
14  of dignity and biological, life-sustaining necessities. Humboldt State University Police
15  Department, its policy makers, supervisory personnel and employees responsible for making
16  and/or carrying out acts giving rise to this Complaint, including the Defendants named in
17  paragraphs 27 through 30, inclusive, are sometimes hereafter collectively referred to as
18  "Defendant HSUPD" or "Humboldt State PD."

19  32. Defendant CHIEF THOMAS DEWEY ("DEWEY") is, and at all times relevant hereto was,
20  the Chief of the HSU Police Department, responsible for directing the operations and
21  establishing the practices and policies of the HSU Police Department, a division of the State of
22  California.

23

24  33.    Defendant LIEUTENANT LYNNE SODERBERG ("SODERBERG") is, and at all times
25  relevant hereto was, a lieutenant employed by the HSU Police Department, and working under
26  the supervision and direction of the State of California.

27

28

7

1    34. Defendant OFFICER RODNEY DICKERSON ("DICKERSON") is, and at all times

2    relevant hereto was, an officer employed by the HSU Police Department, and working under the

3    supervision and direction of the State of California.

4    35. Defendant CALIFORNIA HIGHWAY PATROL ("CHP") is, and at all times relevant hereto

5    was, a division of the State of California.

6    36. Defendant CITY OF EUREKA is, and at all times relevant hereto was, a political

7    subdivision of the State of California. The City of Eureka is a distinct political entity that has its

8    own budget. Plaintiffs are informed and believe and thereon allege that Defendant City of

9    Eureka participated in the raid and continuing harassment and deprivations which give rise to

10    this Complaint, and that Defendant City of Eureka, at all relevant times, did and continues to

11    engage in a pattern and practice that violates the rights of homeless people and creates and

12    perpetuates a hostile environment to deprive homeless people of dignity and biological, life-

13    sustaining necessities. Defendant City of Eureka, its police department, policy makers,

14    supervisory personnel and employees responsible for making and/or carrying out the acts giving

15    rise to this Complaint, including the Defendants named in paragraphs 32 through 33, inclusive,

16    are sometimes hereafter collectively referred to as "Defendant City of Eureka."

17    37.    Defendant EUREKA POLICE DEPARTMENT ("EPD") is, and at all times relevant

18    hereto was, a division of the City of Eureka.

19    38.    Defendant CITY OF FORTUNA is, and at all times relevant hereto was, a political

20    subdivision of the State of California. The City of Fortuna is a distinct political entity that has its

21    own budget. Plaintiff is informed and believes and thereon alleges that Defendant City of

22    Fortuna participated in the raid which gives rise to this Complaint. Defendant City of Fortuna,

23    its police department, policy makers, supervisory personnel and employees responsible for

24    making and/or carrying out acts giving rise to this Complaint are sometimes hereafter

25    collectively referred to as "Defendant City of Fortuna."

26    39.    Defendant FORTUNA POLICE DEPARTMENT ("FPD") is, and at all times relevant

27    hereto was, a division of the City of Fortuna.

28

8

1   40.   Does 1 through 200, inclusive, are city or state police officers (whether line officers or

2   supervisors), Sheriff's deputies, or other city, county, or state officials or policymakers, whose

3   identities are unknown at the present time. All references within to "Defendants", collectively,

4   include these Doe defendants. Plaintiff will move to substitute their true names after they

5   become known.

6   41.   The individual Defendants, including all individual Doe defendants, carried out the

7   actions complained of in their individual capacities, under color of law, in the course and scope

8   of their employment as city, county, and/or state employees.

9   42.   The Defendants are all jointly and severally liable for any damages awards.

10

11                            CLAIMS REQUIREMENT

12   43.   Prior to envoking this Court's pendent jurisdiction over causes of action made pursuant

13   to State law, Plaintiff complied with administrative claim requirements under California law.

14

15                            FACTUAL BACKGROUND

16   44.   The City of Arcata, a university town in Northern Humboldt County, is a somewhat

17   rural town in an economically depressed area. For a number of reasons, the main industries (i.e.

18   fishing and logging) and therefore the traditional primary employment opportunities in the area

19   have almost come to a complete halt. Unemployment levels have risen to astronomical

20   heights; there is no rent control program; there is a huge disparity of low-income housing

21   throughout Humboldt County; many people live on Social Security or disability benefits; and

22   homelessness has hit crisis levels. Despite this, and although Arcata encompasses parks,

23   forest, a marsh, and huge open spaces, homeless people in Arcata and surrounding areas have

24   been systematically prohibited from sleeping anywhere outside; there are almost no places for

25   a person to sleep without paying money.

26   45.   The two shelter programs that *do* exist in Arcata, both independent of and unsupported

27   by the City, are unavailable to most homeless people in Arcata. One, operated by the All-Faith

28   Partnership, is sporadically open due to lack of finances, yet even when it is in full swing

1  houses a maximum 12 people who must sign up in the morning and report in the afternoon to
2  the shuttle van which takes them far out of town to the shelter for the rest of the day and night.
3  There are no walk-ins, and the shelter list is commonly known to be full early in the day. The
4  other program, 'Arcata House' is a transitional residence that is unavailable to most single
5  homeless individuals. Though in the past it transitioned people into more permanent housing
6  after 3 months, in recent times it has housed the same residents continuously for over a year,
7  leaving no openings for others. Even with quicker turnover, Arcata House would only
8  accommodate a fraction of the homeless population.

9

10  46.     Though the Defendant City of Arcata fails to offer *any* "legal" housing facilities for
11  people who have no house of their own and presumably relies upon the two privately-run
12  shelters, the Defendant City of Arcata persists in criminalizing homeless people who attempt to
13  sleep anywhere outside or even in their own vehicles, and no free campground safe zone exists
14  for the 300 plus homeless people who reside in Arcata (population 17, 000) at any given time.
15  The Defendant City of Arcata forbade churches from allowing people to sleep in cars in their
16  parking lots. The Defendant City of Arcata has not only failed to provide any shelter or safe
17  space for homeless people to rest, but has been heavy-handed in discouraging and punishing
18  any groups or individuals who attempt to provide or create such spaces.

19

20  47.     Continuous harassment by police and police enforcement of unconstitutional city
21  municipal codes attempt to prohibit *particular* people (wearing a backpack, appearing
22  homeless) from resting on public lands, from sitting in public places, and even from stopping
23  on the sidewalk if they are accompanied by a dog.

24

25  48.     People Project, of which Plaintiff is a member, has found and continues to find local
26  government unwilling to cease its inhumane and deliberate oppression of homeless people.
27  Defendant City of Arcata ignores years of articulated creative ideas from homeless people and
28  other community members, instead increasingly funding police and rangers to hunt down

10

1  homeless people *sleeping* in the extensive wooded parks, harass homeless people on the streets
2  and other public places, repeatedly destroy and/ or confiscate their meager yet necessary
3  survival gear and personal possessions, and even bulldoze an open field in which veterans are
4  (were) known to sleep. In addition, Defendant City of Arcata has solicited federal tax dollars
5  under the guise of assessing and meeting the needs of homeless people, yet has done nothing of
6  the sort. In light of said observations and experience in Arcata by People Project members
7  (and others), People Project sought, through the temporary encampment demonstration, to
8  connect with and raise awareness of caring community members about the current conditions
9  and policies inflicted against people without conventional shelter and to generate energy to
10 establish a people-run, eco-friendly campground.

11 49.     Through many years of commissions, federally funded task forces, and non-profit and
12 grass-roots efforts, the idea of a campground has repeatedly been one feasible and effective
13 solution to the lack of sleeping places for homeless people. There are homeless people in
14 Arcata, including many war veterans, who find that their mental health cannot be maintained
15 sleeping indoors, especially in crowded situations. *In Arcata, where it rains for several*
16 *months of the year, people must be able to put up tarps or tents to stay dry.* In addition to more
17 affordable housing, and emergency and year-round shelters, a campground, with sleep-vehicle
18 parking, is an obvious solution for the lack of sleeping places.

19 50.     The City of Arcata has shown increasing hostility and discrimination toward homeless
20 adults, youth and families, through policy (written and unwritten), highly publicized rhetoric
21 blaming homeless people for every social ill, through a persistent campaign to shut down the
22 only food bank and place where people can receive minimal public services, and by refusing to
23 provide any public bathrooms. The City of Arcata has waged an overt campaign to so
24 criminalize homeless people (including homeless students at the Humboldt State University),
25 that they [homeless residents] would either disappear, die of exposure, or become a regular part
26 of the jail/prison system. The 'new' jail in sister city Eureka, 7 miles away, is the largest
27 building in the area, and is often referred to as "the homeless shelter." Recently, there was an

28

11

1 announced boycott of travel to Arcata, by people from out-of-town, due to its treatment of
2 homeless people.

3
4
5                                    FACTUAL ALLEGATIONS

6 51.    Plaintiffs and other homeless people and their allies in Arcata have, for many years,
7 consistently addressed the Arcata City government at public meetings, in writing, and through
8 peaceful demonstrations. They have eloquently and persistently argued to City government
9 that a policy, custom, and practice which does not allow a person to sleep anywhere, and often
10 prohibits the presence of a homeless person *anywhere* in town, is illegal and violates basic
11 tenets of human rights.

12 52.    Through court rulings and documents, and through community members, *including*
13 *Plaintiffs*, communicating with the Arcata government, the Arcata City Attorney, Defendant
14 City Manager, and Defendant Police Chief Mendoza are well aware of several times since
15 2005 that courts have determined (in failed criminal cases against homeless people) that there
16 is no adequate legal place for the vast majority of homeless people to sleep in Arcata or
17 surrounding areas.

18 53.    Arcata's homeless population turns out regularly and in extraordinary numbers at
19 weekly city council meetings, (former) homelessness task force meetings, and other
20 government meetings that are required to provide a forum for public comment/participation.
21 Arcata's City Council and City Manager have heard many creative and cooperative
22 suggestions from homeless people and other members of the public, that they have apparently
23 chosen to ignore and/or explicitly reject, even the simple pleading by the homeless people that
24 they be free of harassment so that they could collectively improve their situation and the health
25 of the community.

26 54.    The Defendant City of Arcata, in the last couple of years, was receiving so much public
27 comment regarding the oppressive climate and policies against homeless people, that it moved
28 the public comment period to the end of the weekday evening meetings. Homeless people (and

                                            12

other members of the public), including Plaintiffs, wishing to address the Arcata Council and staff, have waited as late as 1am at meetings to speak; the timing change effectively made it impossible for some homeless people, including Plaintiffs, needing to find a resting place in the dark and be up early before police encounter, to bring their concerns to the local government and public.

55.     On April 21, 2007, People Project began an organized encampment demonstration located outside of the vicinity of the Business District of the City of Arcata on a large public yard adjacent to an underused city building, formerly a community center.

56.     It was common knowledge throughout the homeless community, and to Plaintiffs, that the only shelter, established by the All-Faith Partnership, was full and even had a daily waiting list. In May of 2007, the shelter was closed, as it has done periodically and unpredictably.

57.     People Project was explicit with the public and all encampment participants and visitors, and publicized before and during the encampment demonstration through contact with media, a city council member, hundreds of fliers, and word of mouth, that the encampment would be temporary, organized for a specific length of time; not an attempt to set up anything permanent.

58.     Because there are no public bathrooms in Arcata, a port-a-potty had been rented and paid for by a People Project participant to be on-site at the encampment. As People Project participants began arriving on a rainy April 21, 2007, holding demonstration signs, they witnessed the port-a-potty being removed from the site under the apparent order of the Defendant City of Arcata and the supervision of a Ranger employed by said Defendant City.

59.     Encampment participants gained enough community support for their demonstration that they were able to use the bathrooms of supportive community members for the duration of their stay on the public lawn.

60.     People Project participants hung tarps and tents for shelter and set up a kitchen to provide food for anyone who showed up and wished to eat.

61.     Local residents began arriving to ask questions as well as to offer donations and support.

13

62. During their short stay on the public lawn, numerous people, including youth, families with small children, and veterans arrived at the encampment and gratefully took advantage of the only available safe and convivial place to sleep, eat, and even leave their belongings when they needed to take a load off to go about their daily business, including gathering food and seeking work and resources toward acquire a permanent place of residence. Participants made and held signs to educate passers-by about the intentions and purpose encampment. They also were handing out fliers, engaging community members in respectful dialogue, sharing perspectives on the root causes and injustices associated with homelessness, and using the opportunity to brainstorm more permanent, creative ways to address solutions to the everyday problems faced by the homeless community.

63. During the late evening and morning of April 24, 2007 and April 25, 2007 respectively, there were heavy rains, and Plaintiffs and other People Project encampment participants present on the public lawn at that time totaled about 55 people of all ages.

64. During the late evening and morning of April 24, 2007 and April 25, 2007 Plaintiffs and almost all other People Project encampment participants present on the public lawn at that time were sleeping under tarps or tents, or both.

65. In the early morning darkness of April 25, 2007, after a night of heavy rain, Defendant Police Agencies and the Humboldt County District Attorney's Office District came, in large number, under the tarps and told Plaintiffs and other encampment participants to wake up, startling them with their presence.

66. Over 30 encampment participants, including Plaintiffs, peacefully complied with police order, and sat in a circle on a tarp. Other participants woke up and either joined the circle or left, intimidated by the police presence.

67. Defendant APD officers called people to the circle.

68. Defendant Police Agencies arrived in greater numbers, filling the street with police and Sheriff's cars and lining up in the small street adjacent to the public lawn.

69. Community supporters arrived and were across the street from the encampment, kept away from the public lawn by Defendant Officers.

14

1  70.    Defendant Chapman continued to call people to the circle.

2  71.    Through intimidation, Defendant Officers prevented onlookers and supporters from
3  joining the circle in solidarity.

4  72.    Plaintiffs, not wanting to leave the demonstration, stayed in the circle, and were
5  intimidated to stand up or move at all by the enormous presence of Defendant Officers'.

6  73.    Defendant Police Agencies and Defendant City of Arcata employees loaded the
7  property of the entire encampment, that was not on anyone's person, into boarded-up trucks,
8  garbage bins, and garbage bags.

9  74.    Defendant Police Agencies never told Plaintiffs or the encampment participants still on
10  the public lawn as a group, that Defendant Police Agencies had a warrant, nor did they produce
11  a warrant.

12  75.    Defendant Police Agencies never told Plaintiffs or the encampment participants still on
13  the public lawn as a group, that Plaintiffs or other encampment demonstration participants
14  were violating any laws.

15  76.    After everything was loaded up in trucks, Defendant Police Agencies asked Plaintiff
16  Miller for his identification.  As he was pulling it out of his pocket, Defendant Officers
17  grabbed Plaintiff Starr, sitting next to Plaintiff Miller in the circle, and arrested her.

18  77.    Plaintiff Starr's skirt and pants had fallen down below her pelvis, having been
19  aggressively yanked to her feet by the Defendant Officers, and multiple Defendant Officers,
20  mostly men and one woman, stood over her with her 'private parts' exposed, and failed to
21  cover her up before parading her before the crowd of Defendant officer, District Attorney
22  employees, media, other demonstrators, public supporters, and passers-by. Plaintiffs and other
23  arrested encampment participants had body parts exposed during and due to Defendant
24  Officers' handling of their bodies, which was humiliating and degrading.

25  78.    Defendant Officers, after arresting Plaintiff Starr, proceeded to arrest Plaintiff Miller,
26  then the rest of the encampment participants in the circle.

27  79.    Defendant Officers inflicted pain using torture techniques (under the guise of 'pain
28  compliance) on Plaintiffs and others sitting peacefully in the circle.

15

1   80.    Plaintiffs suffer ongoing injuries due to the tortuous acts of Defendant Officers.

2   81.    Defendant Officers used both metal and plastic handcuffs on Plaintiffs and other

3   encampment participants so tight that it caused nerve damage, laceration, crying, severe pain,

4   cutting off of circulation, and ongoing injury.

5   82.    Defendant Agencies and Officers erected a road-block barricade across the street where

6   stood supportive community members and encampment participants who had been pushed

7   away from the demonstration. At no time did Defendant Agencies or Officers show paperwork

8   or permit for said barricade.

9   83.    The barricade kept the public and supporters from observing police activity on the

10   public lawn, and isolated Plaintiffs (and other encampment participants in the circle).

11   84.    The barricade and other obstructive measures by Defendant Agencies and Officers

12   prevented supportive community members from participating in a demonstration on the public

13   lawn.

14   85.    Plaintiff Ashbaucher had a seizure on the asphalt, in Defendant Officers' custody.

15   Defendant Officers failed to call an ambulance for Mr. Ashbcuher.

16   86.    Defendant Officers watched Plaintiff Ashbaucher convulsing on the asphalt, in tight

17   handcuffs, his head hitting the ground, and did nothing to protect him.

18   87.    Defendant Officer Dickerson kneed Plaintiff Ashbaucher's neck.

19   88.    Plaintiff Ashbaucher was transported to the hospital via ambulance after a People

20   Project supporter on the sidewalk across the street called 911.

21   89.    Plaintiff Ashbaucher was later that day, in poor condition, incarcerated in the jail,

22   mostly naked, cold, wet, and in otherwise inhumane and intolerable conditions; and Plaintiff

23   Asbaucher was denied telephone access. Plaintiff Ashbaucher was held in the jail many hours

24   longer that other arrested Plaintiffs, and released at night.

25   90.    Defendant Officers seized Plaintiff Ashbaucher's anti-viral medications, anti-

26   depressant medications, anti-anxiety medications, and his prescribed medical marijuana. All of

27   these medications were on his person when arrested. None of these medications were returned

28   to Plaintiff Ashbaucher.

16

1    91.    Plaintiff Ashbaucher's physical and mental health suffered horribly without his
2    medications. He presented himself and lists of his medications multiple times to Defendant
3    APD, including Defendant Mendoza, and Plaintiff Ashbaucher visibly thinner and sick was
4    never returned his medications.

5    92.    Defendants seized and held Plaintiffs' and other encampment participants and
6    supporters' property, despite numerous written and verbal pleas, and complying with requests
7    for detailed and signed lists. Some of Plaintiffs' property was returned and some given to the
8    'wrong' people, some destroyed. Property that was returned, 10 days later, had not been
9    inventoried or organized by Defendant APD.

10   93.    Defendants' seizure of Plaintiffs' property rendered Plaintiffs without survival gear,
11   medications, clothes absent of urine, and other necessary personal and collective property,
12   including reading glasses and food.

13   94.    Every Plaintiff, having been awakened by police presence and unable to leave the circle
14   without fear of police intervention and could not go use the community support bathrooms,
15   either involuntary urinated in their clothes on the tarp in the circle, or in the vehicle they were
16   placed in after arrest, or both. One encampment participant defecated in her pants. This
17   humiliating and unsanitary experience happened in the presence of other people.

18   95.    People Project encampment participants, including Plaintiffs after being released from
19   jail in Eureka, having little to no gear, set up on Arcata City Hall lawn in the late afternoon,
20   April 25, 2007. (Plaintiff Ashbaucher was still incarcerated). Plaintiffs and other encampment
21   participants were at City Hall to plead for their survival gear and other supplies seized that
22   community supporters had loaned or donated.

23   96.    Plaintiffs and other People Project encampment participants stayed at Arcata City Hall
24   until Friday, April 27, 2007, having not been returned their property.

25   97.    From April 27, 2007 through to the morning of May 2, 2007, Plaintiffs and other
26   People Project encampment participants continued their encampment demonstration, albeit
27   with scant supplies, on another public lawn out of the vicinity of the downtown Business
28   District at the base of Redwood Park.

17

1    98.     From April 27, 2007 through to the morning of May 2, 2007 Defendant APD and

2    Defendant HSUPD routinely harassed, awakened, and intimidated Plaintiffs and other People

3    Project encampment participants throughout the nights and early hours of the morning. Said

4    Defendants used multiple car police presence and bright lights, at varying and unpredictable

5    times, during sleeping hours.

6    99.     Defendants' (APD and HSUPD) deprivation and intimidation tactics between April 27,

7    2007 and May 2, 2007 (the last day of the encampment) caused nervousness, anxiety, and

8    some participants to leave the encampment and hide to find rest.

9    100.    Plaintiffs voluntarily dismantled, with other participants, the demonstrative

10   encampment on May 2, 2007, as originally planned.

11

12

13

14                                      **CAUSES OF ACTION**

15                                   **FIRST CAUSE OF ACTION**
16                                 **Violation of Federal Civil Rights**
                                         **42 U.S.C. § 1983**
17                            **(By All Plaintiffs Against All Defendants)**
18   **101.** As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were
     deprived of their rights and privileges under the First, Fourth, Fifth, Eighth, and Fourteenth
19   Amendments to the United States Constitutions and the laws of the State of California.
     102.    All Defendents, and in particular the City of Arcata, as a matter of policy, practice, and
20   custom, have with deliberate indifference failed to adequately train, supervise or otherwise
     direct police officers and employees thereby causing Defendants to engage in the unlawful
21   conduct described above.
22   103.    All Defendents, and in particular the City of Arcata, as a matter of policy, practice, and
     custom, has with deliberate indifference failed to properly sanction or discipline police
23   officers and employees, thereby causing Defendants to engage in the unlawful conduct
24   described above.
     104.    All Defendents, and in particular the City of Arcata, as a matter of policy, practice, and
25   custom, has with deliberate indifference failed to use adequate hiring procedures, thereby
     resulting in negligent and reckless hiring of individual Defendants.
26   105.    All Defendents, and in particular the City of Arcata, make it governmental policy,
27   practice, and custom to deprive homeless people of the Constitutional rights described above.
     106.    The acts of Defendants described above were conducted under color of law and
28   deprived plaintiffs of their rights and privileges secured by the Constitution of the United
     States.

                                              18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND CAUSE OF ACTION**
**(Denial of Constitutional Right to Equal Protection**
**(By All Plaintiffs Against All Defendants)**

107.   Defendants' above-described policies, practices and conduct are intended and designed to single out homeless people and have the purpose and effect of depriving homeless people of their liberty and property, and of attempting to drive homeless people from the City of Arcata. These policies and actions are based on defendants' animus towards this disfavored group and lacks a rational relationship to any legitimate governmental interest. In adopting and implementing these policies and practices with the intent to harm and disadvantage homeless persons in the City of Arcata, the Defendants have violated the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983.

**THIRD CAUSE OF ACTION**
**(Excessive Detention in Violation of the Fourth and Fourteenth**
**Amendments to the United States Constitution and 42 U.S.C. §1983)**
**(By All Plaintiffs Against All Defendants)**

108.   Defendants' conduct pursuant to the Excessive Detention Policy constitutes the excessive and unreasonable detention for the purpose of preventing Plaintiffs from, and punishing Plaintiffs for, the exercise of their First Amendment Rights.  The Excessive Detention policy therefore violates the prohibition against unreasonable seizure of the Fourth and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.

**FOURTH CAUSE OF ACTION**
**Deprivation of Rights to Free Speech**
**(By All Plaintiffs Against All Defendants)**

109.   Plaintiffs are informed and believe, and thereon allege, that Defendants, above-described policies, practices and conduct constitute interference, and attempted interference, by threats, intimidation and coercion, and that Defendants have engaged in a pattern and practice of unreasonable, unnecessary and excessive force, detention, abuse and intimidation with the intent to prevent or discourage People Project and its members from engaging in expression of their beliefs. Plaintiffs allege on information and belief that such conduct is intended by defendants to chill the rights of th Plaintiffs and to punish Plaintiffs for their political views in violation of their right to freedom of expression and association under the First and Fourteenth Amendments to the Constitution.

**FIFTH CAUSE OF ACTION**
**Trespass to Chattels; Conversion; Deprivation of Due Process**
**(By All Plaintiffs Against All Defendants)**

110.   Based on the conduct alleged above, Defendants, and each of them, are liable to Plaintiffs for committing a trespass against her chattels by unlawfully seizing their property in the first place.  The City of Arcata and the Arcata Police Department is further liable refusing to return it to her except after great effort on their part. For the same conduct, they are also liable to Plaintiffs for depriving them of due process, and for conversion (given the fact that they still have not returned all the property that was seized).

19

**SIXTH CAUSE OF ACTION**
**(Denial of Constitutional Right Against Unreasonable Search and Seizure)**
**(By All Plaintiffs Against All Defendants)**

111.   Defendants' above-described policies, practices and conduct violated plaintiff's right to be free from unreasonable searches and seizures under Article 1, § 13 of the California Constitution.

**SEVENTH CAUSE OF ACTION**
**Discrimination, Harrassment, Deliberate Indifference to Medical Needs**
**(By Hans Asbaucher Against All Defendants)**

112.   Mr. Ashbaucher suffered discrimination and harassment at the hands of the above-named Defendants when the was assaulted, unlawfully arrested, denied medical treatment, and deprived of life-sustaining prescription medication both while incarcerated and after he was released (when, despite numerous written and verbal requests, the Arcata Police refused to return his medication) to his sexual orientation and medical status.  Mr. Asbaucher has still not been able to receive the seized medication and was forced to purchase more of the expensive anti-retroviral medicines, thereby proximately and foreseeably causing him damage, injury, and loss.

**EIGHTH CAUSE OF ACTION**
**Intentional and Negligent Infliction of Emotional Distress**
**(By All Plaintiffs Against All Defendants)**

113.   Defendants are liable for the emotional distress they caused Plaintiffs by their shocking and outrageous actions, including without limitation the ongoing governmental custom of harassment and criminalization of homeless individuals and the false arrest and imprisonment of clearly non-violent demonstrators.

114.   All Defendant public entities (cities, state, and county) are liable in *respondeat superior* for intentional infliction of emotional distress committed by the individual Defendant officers in the course and scope of their employment.

**NINTH CAUSE OF ACTION**
**Intimidation, Harassment, Deprivation of Human Necessities and Basic Dignity**
**(By All Plaintiffs Against All Defendants)**

115.   As seems to be the Plaintiffs' policy, custom, and practice, waking up homeless people, stealing and/or destroying their property, harassing them, falsely arresting them, and seemingly trying to force them out of town.

*Pro Se Plaintiffs also make these claims against all Defendants:*

**TENTH CAUSE OF ACTION**
**Interference With and Retaliation for Exercise of Free Speech, Freedom of Assembly, and Freedom to Petition the Government for Redress of Grievances; Abuse of Process; and Violation of Due Process**

20

## ELEVENTH CAUSE OF ACTION
**Unlawful Arrest**

## TWELFTH CAUSE OF ACTION
**(Use of Excessive Force in Violation of the Fourth and Fourteenth
Amendments to the United States Constitution and 42 U.S.C. §1983)
(By All Plaintiffs Against All Defendants)**

## THIRTEENTH CAUSE OF ACTION
Deprivation of Sleep and other Life-Sustaining Conduct

## FOURTEENTH CAUSE OF ACTION
Intolerable Custodian Conditions and Failure to Allow Plaintiffs phone Access in HCCF

## FIFTEENTH CAUSE OF ACTION
Improper Use of Handcuffs Causing Severe Pain and injury

## SIXTEENTH CAUSE OF ACTION
Class discrimination, Discrimination for being poor

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

I.     Declare that the Defendants' pattern, practice and/or policy violates plaintiffs' Fourth,
Fifth, Eighth and Fourteenth Amendment rights and internationally recognized treatise rights;

II.     Issue preliminary and permanent injunctive relief enjoining the Defendants' conducting
any sweeps of homeless persons' sleeping places or seizing any homeless person's property
until adequate shelter facilities or safe spaces and policies are promulgated to protect and
safeguard plaintiffs' Fourth, Fifth, Eigth, and Fourteenth

Amendment Rights;

III     Issue preliminary and permanent injunctive relief enjoining the Defendants, its
officials, officers, employees, agents, assigns, and those acting in concert with it from
depriving homeless persons from and punishing homeless people for sleeping and performing
other life-sustaining conduct.

IV.     Award plaintiffs reasonable damages, as may be proved at trial;

21

1 | V. Award plaintiffs punitive (exemplary) damages against the individual defendants, in

2 | amounts to be determined by a jury;

3 | VI.    Award plaintiffs three times the actual damages awarded, and for a civil penalty of

4 | $25,000 for each violation which occurred, pursuant to Cal. Civil Code §§ 52.1 and 52(a), (b);

5 | VII.    Award plaintiffs their reasonable attorney's fees and costs and expenses of litigation,

6 | pursuant to 42 U.S.C. § 1988, Cal. CCP § 1021.5, Gov't Code § 800, and Civil Code §

7 | 52(b)(3);

8 | VIII. Grant such other relief as the Court deems just and proper.

9

10

11 | **DEMAND FOR JURY TRIAL**

12 | 101.    Plaintiffs hereby demand a jury trial on all issues

13

14

15

16 |                                                        May 5, 2008

17

18

19

20

21

22

23

24

25

26

27

28

22