1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6          FOR THE NORTHERN DISTRICT OF CALIFORNIA
7                  EUREKA DIVISION
8

9   HANS KARL ASHBAUCHER, et al.,          No. CV 08-2840 MHP (NJV)

10          Plaintiffs,                    **REPORT AND RECOMMENDATION TO
                                           GRANT DEFENDANTS' MOTION TO
11      v.                                 INVOLUNTARILY DISMISS
                                           PLAINTIFFS MICHELLE HERNANDEZ
12  CITY OF ARCATA, et al.,                AND KRISTOFER JOHNSON AND TO
                                           GRANT IN PART AND DENY IN PART
13          Defendants.                    DEFENDANTS' RULE 12(b)(6) MOTION
                                           TO DISMISS**
14  _____/

15                                         (Docket Nos. 141 & 142)

16          Defendants City of Arcata and County of Humboldt ("Defendants") move to dismiss

17  plaintiffs Michelle Hernandez and Kristofer Johnson for failure to prosecute.  Doc. No. 141.

18  Plaintiffs Hernandez and Johnson have not filed an opposition, and active Plaintiffs Ashbaucher,

19  Starr, and Miller ("Plaintiffs") do not oppose the motion.  Defendants also move to dismiss the

20  action for failure to state a claim upon which relief can be granted under Federal Rule of Civil

21  Procedure 12(b)(6).  Doc. No. 142.  Alternatively, Defendants move for judgment as a matter of law

22  under Rule 56.  Pursuant to Federal Rule of Civil Procedure 72(b), this Court recommends that

23  Defendants' motion to involuntarily dismiss plaintiffs Hernandez and Johnson for failure to

24  prosecute be granted, and that Defendants' motion to dismiss the action be granted in part with leave

25  to amend and denied in part.

26  \\

27  \\

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

# I. BACKGROUND

Plaintiffs Hans K. Ashbaucher, Kimberly L. Starr, Johnie C. Miller, Michelle Hernandez, and Kristofer Johnson filed this civil rights action in pro se.  By order dated January 30, 2009, the Court referred this action to the undersigned for all pretrial and non-dispositive proceedings pursuant to Federal Rule of Civil Procedure 72(a) and for reports and recommendations on all dispositive matters pursuant to Rule 72(b) and the corresponding Civil Local Rules.  *See* 28 U.S.C. § 636(b)(1). On December 2, 2009, pro bono counsel was appointed for the limited scope and purpose of representing the Plaintiffs up through and including the hearing on Defendants' motion to dismiss.  Doc. Nos. 126 & 127.

On March 17, 2010, by stipulation, Plaintiffs Ashbaucher, Starr, and Miller filed their Second Amended Complaint.  Doc. No. 140.  Plaintiffs allege four causes of action under 42 U.S.C. § 1983 for cruel and unusual punishment, violation of their right to equal protection resulting from Defendants' selective enforcement of municipal laws against homeless individuals, unconstitutionally vague and overbroad municipal laws, and unreasonable search and seizure of Plaintiffs' property.  Plaintiffs' counsel has informed the Court that plaintiffs Hernandez and Johnson were not included in the Second Amended Complaint because counsel could not locate or establish communication with either plaintiff.

Also by stipulation, Plaintiffs Ashbaucher, Starr, and Miller dismissed all defendants but the City of Arcata and County of Humboldt.  Therefore, Defendants Michael Hackett, Arcata Police Department, Chief Randy Mendoza, Captain Tom Chapman, Officer Martinez, Officer Drake Goodall, Humboldt County Sheriff's Department, Sheriff Gary Philp, Sgt. Buihner, Deputy Chandler, Humboldt County Correctional Facility, Humboldt State University Police Department, Chief Thomas Dewey, Lieutenant Lynne Soderberg, Officer Rodney Dickerson, California Highway Patrol, City of Eureka, Eureka Police Department, City of Fortuna, Fortuna Police Department, Humboldt County District Attorney's Office and District Attorney Paul Gallegos were dismissed and are no longer parties to this action.

\\

**United States District Court**
For the Northern District of California

## II.  INVOLUNTARY DISMISSAL

Upon the defendant's motion or *sua sponte*, the district court may involuntarily dismiss an action for failure to prosecute.  Fed. R. Civ. P. 41(b).  The district court has discretion in granting an involuntary dismissal and must weigh the following factors:  "1) the court's need to manage its docket, 2) the public interest in expeditious resolution of litigation, 3) the risk of prejudice to defendants from delay, 4) the policy favoring disposition of cases on their merits," and 5) the availability of less drastic sanctions.  *See Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 651-52 (9th Cir. 1991); *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1226 (9th Cir. 2006).

The factors weigh in favor of granting involuntary dismissal.  The inclusion of non-participating plaintiffs inhibits the court's ability to manage its docket and impedes the resolution of the litigation.  Prejudice is presumed unless the plaintiff provides a non-frivolous explanation for the delay in prosecuting.  *See In re PPA Prods. Liability Lit.*, 460 F.3d at 1227-28; *Laurino v. Syringa General Hosp.*, 279 F.3d 750, 753 (9th Cir. 2002).  Here, plaintiffs Hernandez and Johnson have not provided any explanation for their delay in prosecuting this action.  Plaintiffs Hernandez and Johnson have not participated in this action since January 2009 and they have not opposed Defendants' motion to dismiss them from the action.  Doc. No. 69.  Beginning in February 2009, most of Plaintiffs' filings were submitted on behalf of only Plaintiffs Ashbaucher, Starr, and Miller, and mail sent by the Court to plaintiffs Hernandez and Johnson was returned as undeliverable.  Doc. Nos. 72-74, 83-85, 89, 98, 101, 129, 133, 136, 144 & 145.  Plaintiffs' counsel has not been able locate or establish communication with plaintiffs Hernandez and Johnson, and they were not included as plaintiffs in the Second Amended Complaint.

Finally, given the early stage of litigation, plaintiffs Hernandez and Johnson's prior pro se status, and their homelessness, dismissal without prejudice, rather than with prejudice, is a less drastic sanction appropriate here.  *See Laurino*, 279 F.3d at 754 (dismissal without prejudice, rather than with prejudice, was the appropriate and less drastic alternative sanction for case in early stage of litigation).  The Court recommends granting involuntary dismissal without prejudice of plaintiffs Hernandez and Johnson from this action as to all Defendants.  Per the Second Amended Complaint

1   and stipulation with the three active Plaintiffs, only Defendants City of Arcata and County of

2   Humboldt remain in this action.

3

4                              **III.  MOTION TO DISMISS**

5   **A.      Legal Standard**

6           A complaint must contain a "short and plain statement of the claim showing that the pleader

7   is entitled to relief."  Fed. R. Civ. P. 8(a).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a

8   complaint may be dismissed against a defendant for failure to state a claim upon which relief can be

9   granted against that defendant.  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency

10  of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001).  "Dismissal can be based on the

11  lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

12  theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990).  A motion to dismiss

13  should be granted if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible

14  on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "plausibility standard is

15  not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

16  has acted unlawfully."  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting

17  *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief . . .

18  [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

19  common sense."  *Id.*, 129 S.Ct. at 1950.

20          "[A]llegations of material fact are taken as true and construed in the light most favorable to

21  the non-moving party."  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The

22  court need not, however, accept as true pleadings that are no more than legal conclusions or the

23  "formulaic recitation of the elements of a cause of action."  *Iqbal*, 129 S.Ct. at 1949-50 (quoting

24  *Twombly*, 550 U.S. at 555); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001);

25  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  "[A] court may take judicial

26  notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir.

27  2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also

28  consider "documents whose contents are alleged in a complaint and whose authenticity no party

United States District Court
For the Northern District of California

4

questions, but which are not physically attached to the pleading" without converting a motion to

dismiss under Rule 12(b)(6) into a motion for summary judgment, *Branch v. Tunnell*, 14 F.3d 449,

454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d

1119 (9th Cir. 2002).  "The district court will not accept as true pleading allegations that are

contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or

incorporated in the pleading."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice &

Procedure § 1363 (3d ed. 2004).

**B.      Relation Back**

         The Court first addresses Defendants' arguments that the Second Amended Complaint

impermissibly expands Plaintiffs' claims.  Defendants contend that the amended allegations of the

Second Amended Complaint do not relate back to the original complaint and argue that the

amendments concerning conduct prior to April 21, 2007 are therefore time-barred by the applicable

statute of limitations.  The parties do not dispute that the state statute of limitations for personal

injury actions applicable to § 1983 actions provides for a two-year limitation period.  *See*

*Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004).  At issue is whether the amended claims

relate back to the original complaint.  Federal Rule of Civil Procedure 15(c)(1)(B) provides that an

amendment to a pleading relates back to the date of the original pleading when "the amendment

asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or

attempted to be set out - in the original complaint."  Relation back under Rule 15(c)(1) "depends on

the existence of a common 'core of operative facts' uniting the original and newly asserted claims."

*Mayle v. Felix*,  545 U.S. 644, 659 (2005).

         Defendants argue that the initial pleading failed to identify any of the Arcata Municipal

Ordinances challenged in the Second Amended Complaint and failed to allege that they were

personally subjected to any unconstitutional enforcement effort prior to April 21, 2007.  Doc. 147 at

10.  Defendants contend that the original complaint and First Amended Complaint alleged facts

limited to events between April 21, 2007 and May 2, 2007 concerning "an encampment to protest

defendants' conduct during those events."  Doc. 142 at 20.  As one could infer from Defendants'

**United States District Court**
For the Northern District of California

1    contention, the April 21, 2007 encampment was organized to protest Defendants' prior conduct,

2    rather than conduct that had not yet occurred.  The allegations of the original complaint sufficiently

3    gave Defendants "fair notice" of the claims being asserted and the grounds upon which they rest.

4    *Twombley*, 550 U.S. at 555.  The following allegations in the original pro se complaint generally

5    refer to the municipal ordinances and purported misconduct identified more specifically in the

6    Second Amended Complaint:

7    "[c]ontinuous harassment by police and police enforcement of
     unconstitutional city municipal codes attempt to prohibit *particular* people
8    (wearing a backpack, appearing homeless) from resting on public lands,
     from sitting in public places, and even from stopping on the sidewalk if they
9    are accompanied by a dog."  Doc. No. 1 ¶ 47.

10   "Plaintiffs and other homeless people and their allies in Arcata have, for
     many years, consistently addressed the Arcata City government at public
11   meetings, in writing, and through peaceful demonstrations.  They have
     eloquently and persistently argued to City government that a policy, custom,
12   and practice which does not allow a person to sleep anywhere, and often
     prohibits the presence of a homeless person *anywhere* in town, is illegal and
13   violates basic tenets of human rights."  *Id.* ¶ 51.

14   "Through court rulings and documents, and through community members,
     *including Plaintiffs*, communicating with the Arcata government, the Arcata
15   City Attorney, Defendant City Manager, and Defendant Police Chief
     Mendoza are well aware of several times since 2005 that courts have
16   determined (in failed criminal cases against homeless people) that there is
     no adequate legal place for the vast majority of homeless people to sleep in
17   Arcata or surrounding areas."  *Id.* ¶ 52.

18   These allegations from the initial complaint share the same operative facts as those alleged in the

19   Second Amended Complaint such that the amended claims relate back to the initial complaint

20   pursuant to Rule 15(c)(1)(B).  The Court therefore recommends a determination that the amended

21   allegations in the Second Amended Complaint concerning Defendants' misconduct and Plaintiffs'

22   injuries incurred before April 21, 2007 are not time-barred.

23

24   **C.      First Cause of Action:  Eighth Amendment Cruel and Unusual Punishment**

25           At the heart of this action is a plea by three homeless individuals to change the laws adopted

26   by the City of Arcata that prohibit camping in public which have the greatest impact on the homeless

27   community.  Courts that have reviewed similar ordinances have recognized that such laws address

28   legitimate concerns for public health, sanitation, safety, and commercial growth resulting from

**United States District Court**
For the Northern District of California

individuals sleeping or camping on public grounds.  Plaintiffs in those cases, as here, raise an

overarching question, that is, what would become of the homeless if anti-camping ordinances were

enforced in municipalities such as Arcata where there are more homeless individuals than available

shelter beds?  The common instruction by law enforcement to "move along" will be repeated across

the country until there is simply nowhere left for the homeless to move along to.  *See Anderson v.*

*City of Portland*, 2009 WL 2386056 at *2 (D. Or. July 31, 2009).

In the present motion to dismiss, the Court must address a more limited question raised by

Plaintiffs' First Cause of Action, that is, do Plaintiffs sufficiently allege a claim that Arcata

Municipal Code Sections 10004 and 10006 violate the Eighth Amendment prohibition against cruel

and unusual punishment by criminalizing homelessness?  Courts that have reviewed similar

ordinances disagree on the issue whether the Eighth Amendment protects the homeless against laws

criminalizing particular conduct by homeless people such as sleeping or camping in public

overnight.  The Ninth Circuit squarely addressed the issue in *Jones v. City of Los Angeles*, but

withdrew the opinion at the joint request of the parties, leaving the issue unsettled in this Circuit.

*Jones v. City of Los Angeles*, 444 F.3d 1118, 1134 (9th Cir. 2006), *vacated as moot*, 505 F.3d 1006

(9th Cir. 2007).  The Court therefore relies on *Jones* as informational, but not binding, authority

here, as have other district courts in this Circuit that have reviewed similar challenges by homeless

individuals to camping ordinances.  *See Lehr v. City of Sacramento*, 624 F. Supp. 2d 1218, 1225-26

(E.D. Cal. 2009) (citing *DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1175-76 (9th Cir.

2005) (Beezer, J., concurring)); *Anderson v. City of Portland*, 2009 WL 2386056 at *5-7 (D. Or.

July 31, 2009) (declining to adopt *Jones* majority holding that status protected by the Eighth

Amendment is determined solely by "involuntary" conduct).

Plaintiffs bring a § 1983 claim to challenge the following Arcata ordinance provisions under

the Eighth and Fourteenth Amendments:

> **Sec. 10004. Overnight use prohibited.**
> There is to be no camping on public grounds nor overnight use of
> public grounds or public buildings unless specifically authorized by the
> City Manager or his/her designee.  Camping is defined as temporarily
> living or occupying an area in the outdoors.

**United States District Court**
For the Northern District of California

**Sec. 10006. Use of public buildings and grounds prohibited without permission.**

A.    No individual or group may use public buildings or grounds without first obtaining a permit from the City Manager or his/her designee, except for normal leisure and recreational use of City grounds when such use does not preclude or discourage similar use by others.

B.    Large group activities, as determined by the City Manager or his/her designee, may be held only on the Plaza, in Redwood Park, or in the Arcata Community Park and Sports Complex.  Events that close all Plaza streets are limited to weekends and holidays.  Events held in Redwood Park or the Community Park and Sports Complex are not limited to weekends or holidays.

Arcata Municipal Code, Title X, Ch. 1 §§ 10004, 10006.  Each of these ordinances is identified in the amended allegations of the Second Amended Complaint. Doc. No. 140 ¶¶ 2, 17, 18.  The Court notes that the Arcata Municipal Code contains penalty provisions which provide that a violation of any code provision amounts to an infraction, unless the offense is specifically designated as a misdemeanor in the code.  Arcata Municipal Code Title I, Ch. 3, Section 1200.  An infraction is punishable by fine starting at $100 for a first violation, $200 for a second violation of the same ordinance within one year, and $500 for each additional violation within one year.  *Id.*

Plaintiffs contend that they were arrested for the status of being homeless under laws that prohibit involuntary conduct, sleeping outside on public grounds, conduct over which they have no control because they are homeless, unless the law were to require Plaintiffs to forego sleeping.  Plaintiffs allege that each of them is homeless, that the homeless shelters in Arcata are inadequate to serve the needs of the homeless population there, and that there is nowhere for homeless people to sleep legally outside in Arcata.  Doc. No. 140 ¶¶ 5-7, 11-16.  Plaintiffs further allege that each of them have been told by Arcata police officers that they could not sleep outside or had been disturbed from their sleep and told to move.  *Id.* ¶¶ 23, 25-27.  In support of their challenge to Section 10004, Plaintiffs allege that Ms. Starr was repeatedly awoken by Arcata police officers while sleeping in her vehicle, that Mr. Miller's tent had been slashed open and that Arcata Police Ranger Murphy had left his card there, and that Mr. Ashbaucher has been cited for sleeping outside, Doc. No. 140 ¶¶ 26, 27, 56, although Plaintiffs acknowledge that the Second Amended Complaint does not identify or allege which ordinance was being enforced against Plaintiffs in course of the

8

United States District Court
For the Northern District of California

1   alleged conduct.  Doc. No. 146 at 19 n.7.  In support of their Eighth Amendment challenge to

2   Section 10006, Plaintiffs allege that each of them was arrested for violations of Section 10006.

3   Doc. No. 140 ¶¶ 21, 24, 25, 45, 63.

4           Plaintiffs bring both facial and as-applied challenges under the Eighth and Fourteenth

5   Amendments, alleging that these ordinances criminalize the unavoidable acts of sitting, lying or

6   sleeping at night while being involuntarily homeless, when the number of homeless far exceeds the

7   number of available shelter beds.  Doc. No. 146 at 17.  Plaintiffs contend that these ordinances

8   prohibiting involuntary conduct on the basis of their homeless status violates the Cruel and Unusual

9   Punishments clause under *Robinson v. California*, 370 U.S. 660 (1962) and *Powell v. Texas*, 392

10  U.S. 514 (1968).  Under *Powell* and *Robinson*, courts have invalidated statutes criminalizing the

11  status of vagrancy.  *See Goldman v. Knecht*, 295 F. Supp. 897, 899 (D. Colo. 1969) (invalidating

12  state statute legislating the arrest of a vagrant defined as "a person able to work in an honest and

13  respectable calling, who is found loitering or strolling about, frequenting public places where liquor

14  is sold, begging or leading an idle, immoral or profligate course of life, or not having any visible

15  means of support").  In the wake of *Robinson* and *Powell*, laws have been drafted to avoid

16  criminalizing the mere status of vagrancy or homelessness.  Courts more recently have reviewed

17  ordinances, such as the ones challenged here, that prohibit conduct that is known to be performed

18  primarily by homeless individuals.  Upon careful review of the holdings of *Robinson* and *Powell*,

19  discussed below, the Court concludes that the Eighth Amendment does not extend protection to

20  involuntary conduct, such as camping overnight on public grounds, attributable to Plaintiffs'

21  homeless status.

22          The Supreme Court has recognized three distinct limitations on the state's criminal power

23  under the Cruel and Unusual Punishments Clause and the Fourteenth Amendment:

24              First, it limits the kinds of punishment that can be imposed on those
                convicted of crimes; second, it proscribes punishment grossly
25              disproportionate to the severity of the crime; and third, it imposes
                substantive limits on what can be made criminal and punished as such.
26

27  *Ingraham v. Wright*, 430 U.S. 651, 667 (1977).  The first two limitations serve the "'primary

28  purpose'" of the Cruel and Unusual Punishments Clause, which "'has always been considered, and

9

United States District Court
For the Northern District of California

1  properly so, to be directed at the method or kind of punishment imposed for the violation of

2  criminal statutes limit the punishment that is imposed.'"  *Id.* (quoting *Powell v. Texas*, 392 U.S.

3  514, 531-32 (1968)).  *Ingraham* distinguished the third limitation on "what can be made criminal"

4  within the Cruel and Unusual Punishments Clause "as one to be applied sparingly."  *Id.*

5       The Supreme Court announced this limitation on what the state can criminalize in *Robinson*

6  *v. California*, 370 U.S. 660 (1962).  In *Robinson*, the Supreme Court reversed the defendant's

7  conviction under a provision of the California Health and Safety Code making it a criminal offense

8  for a person to "be addicted to the use of narcotics."  *Id.* at 660 and n.1.  *Robinson* held that the

9  statute inflicted an unconstitutionally cruel and unusual punishment because it criminalized the

10  "'status' of narcotic addition . . . for which the offender may be prosecuted 'at any time before he

11  reforms.'. . . whether or not he has ever used or possessed any narcotics within the State, and

12  whether or not he has been guilty of any antisocial behavior there."  *Id.* at 666.

13       In *Powell v. Texas*, the Supreme Court addressed an as-applied Eighth Amendment

14  challenge to conviction for public drunkenness under the Texas Penal Code.  The statute imposed a

15  fine on "'[w]hoever shall get drunk or be found in a state of intoxication in any public place.'"  392

16  U.S. at 517.  The defendant argued that he was "'afflicted with the disease of chronic alcoholism,

17  that his appearance in public (while drunk was) not of his own volition, and that to punish him

18  criminally for that conduct would be cruel and unusual."  *Id.*  At bench trial, the defendant testified

19  about the history of his drinking problem and offered the testimony of a psychiatrist who opined

20  that the defendant had "an uncontrollable compulsion to drink."  *Id.* at 518-19.  The trial judge

21  found that Powell was indeed a chronic alcoholic and that "a chronic alcoholic does not appear in

22  public by his own volition but under a compulsion."  *Id.* at 521.  Nevertheless, the trial judge ruled

23  as a matter of law that chronic alcoholism was not a defense to the charge of public drunkenness,

24  found Powell guilty and fined him $50.  Powell appealed his conviction in the Travis County Court

25  to the Supreme Court of the United States.  *Id.* at 517.

26       A plurality of the Supreme Court upheld Powell's conviction on the grounds that the trial

27  record was inadequate to determine whether chronic alcoholism would lead to loss of control or

28  inability to abstain from drinking, and held that the Eighth Amendment did not prohibit the state

United States District Court
For the Northern District of California

from prosecuting and punishing a chronic alcoholic for appearing drunk in public.  *Id*. at 521-25. Writing for the plurality, joined by three members of the *Robinson* majority, Chief Justice Warren and Justices Black and Harlan, Justice Marshall held that, on its face, Powell's conviction did not fall within the holding of *Robinson* because Powell was not convicted for the status of being a chronic alcoholic, but for the conduct of being in public while drunk.  *Id*. at 532.  The *Powell* plurality noted, "The State of Texas thus has not sought to punish a mere status, as California did in *Robinson*; nor has it attempted to regulated appellant's behavior in the privacy of his own home. Rather, it has imposed upon appellant a criminal sanction for public behavior which may create substantial health and safety hazards, both for appellant and for members of the general public."  *Id*. The *Powell* plurality distinguished Powell's conviction for public drunkenness from "convicting one for being an addict, being a chronic alcoholic, being 'mentally ill, or a leper.'"  *Id*. (quoting *Robinson*, 370 U.S. at 666).  Addressing the suggestion that Powell's condition of public intoxication was compelled by his disease of chronic alcoholism, the plurality wrote that  "there is a substantial definitional distinction between a 'status,' as in *Robinson*, and a 'condition,' which is said to be involved in this case."  *Id*. at 533.  In his concurring opinion, Justice White disagreed with any such distinction between a status and a condition, which was not therefore adopted by a majority of the Court in *Powell*.  392 U.S. at 550 n.2.

Three other members of the *Robinson* majority, Justices Douglas, Brennan and Stewart, author of the *Robinson* opinion, joined Justice Fortas' dissenting opinion in *Powell*, which urged that *Robinson* should be extended to overturn Powell's conviction for public drunkenness on the ground that he was a "'chronic alcoholic'" who had demonstrated that he was unable to resist the "'constant excessive consumption of alcohol' and 'does not appear in public by his own volition but under a compulsion' which is part of his condition."  *Powell*, 392 U.S. at 569-70 (Fortas, J., dissenting).  The *Powell* dissent recognized *Robinson* to state a general principle that "[c]riminal penalties may not be inflicted upon a person being in a condition he is powerless to change."  *Id*. at 567 (Fortas, J., dissenting).

Addressing the dissent, the *Powell* plurality opinion limited the holding of *Robinson* to permit criminal penalties "only if the accused has committed some act, has engaged in some

**United States District Court**
For the Northern District of California

behavior, which society has an interest in preventing, or perhaps in historical common law terms, has committed some actus reus." *Powell*, 392 U.S. at 533.  The plurality further elucidated that *Robinson* "does not deal with the question of whether certain conduct cannot constitutionally be punished because it is, in some sense, 'involuntary' or 'occasioned by compulsion.'" *Id.* at 533.  To support this reading of *Robinson*, the *Powell* plurality reasoned that "because the [*Robinson*] Court interpreted the statute there involved as making a 'status' criminal, it was able to suggest that the statute would cover even a situation in which addiction had been acquired involuntarily.  That this factor was not determinative in the case is shown by the fact that there was no indication of how Robinson himself had become an addict." *Id.* at 534 (citing *Robinson*, 370 U.S. at 667 n.9).  To further support this limited reading of *Robinson* to prohibit status crimes, Justice Black, in his concurring opinion joined by Justice Harlan, wrote, "We explicitly limited our holding [in *Robinson*] to the situation where no conduct of any kind is involved." *Powell*, 392 U.S. at 542 (Black, J., concurring).  Justice Black further reasoned that "any attempt to explain *Robinson* as based solely on the lack of voluntariness encounters a number of logical difficulties," among them, the "inherently elusive question" of whether an act is "involuntary." *Id.* at 542, 544.

Much has been said of Justice White's *Powell* concurrence which provided the decisive fifth vote to uphold Powell's conviction, and the Court adds its own analysis to the discourse over the reach and holding of *Powell*.  Justice White did not join the plurality and concurred only in the result, reasoning that "even if Powell was compelled to drink, and so could not constitutionally be convicted for drinking, his conviction in this case can be invalidated only if there is a constitutional basis for saying that he may not be punished for being in public while drunk." 392 U.S. at 549 (White, J., concurring in the judgment).  By voting to uphold the conviction, Justice White found no such basis, noting that nothing in the *Powell* record supported the trial court's conclusion that Powell was compelled not only to drink "but also to frequent public places when intoxicated." *Id.* Justice White construed *Robinson*, in which he dissented, to prohibit status crimes that criminalize "a condition brought about by acts remote in time from the application of the criminal sanctions contemplated, a condition which was relatively permanent in duration, and a condition of great magnitude and significance in terms of human behavior and values." *Id.* at 550 n.2.

Justice White did allow for the possibility, however, that the Eighth Amendment may very well forbid a conviction of a chronic alcoholic who becomes so drunk that he loses the power to control his movements, "but only on a record satisfactorily showing that it was not feasible for him to have made arrangements to prevent his being in public when drunk and that his extreme drunkenness sufficiently deprived him of his faculties on the occasion at issue." *Id*. at 552.  Noting the plight of chronic alcoholics who are homeless, Justice White allowed for the possibility that "a showing could be made that resisting drunkenness is impossible and that avoiding public places when intoxicated is also impossible." *Id*. at 551.  Justice White considered the possibility that with the proper showing, the public drunkenness statute as applied to homeless alcoholics "is in effect a law which bans a single act for which they may not be convicted under the Eighth Amendment - the act of getting drunk." *Id*.  This issue whether the Eighth Amendment protects the homeless against laws that prohibit conduct that is impossible for a homeless person to avoid was not, however, presented in *Powell* and has not been decided by the Supreme Court.

The Ninth Circuit has recognized that no majority opinion emerged in *Powell* on the issue "whether certain conduct cannot constitutionally be punished because it is, in some sense, 'involuntary' or occasioned by a compulsion." *United States v. Kidder*, 869 F.2d 1328, 1332 (9th Cir. 1989).  Nevertheless, the *Jones* majority concluded that Justice White and the four *Powell* dissenters "understood *Robinson* to stand for the proposition that the Eighth Amendment prohibits the state from punishing an involuntary act or condition if it is the unavoidable consequence of one's status or being." *See Jones v. City of Los Angeles*, 444 F.3d at 1135 (citing *Powell*, 392 U.S. at 548, 550 n.2, 551 (White, J., concurring in the judgment) and at 567 (Fortas, J., dissenting)).  Finding that these five Justices constituted "a majority of the Court" in *Powell* that supported the principle of prohibiting criminal liability for a criminal act, the *Jones* majority adopted Justice White's test for determining whether the state may punish a particular involuntary act or condition: "'the proper subject of inquiry is whether volitional acts brought about the "condition" and whether those acts are sufficiently proximate to the "condition" for it to be permissible to impose penal sanctions on the "condition."'" *Id*. at 1136 (quoting *Powell*, 392 U.S. at 550 n.2 (White, J., concurring in the judgment)).  Plaintiffs make a similar argument and ask the Court to adopt the

*Jones* majority opinion.  Doc. No. 146 at 18.  The Court declines to adopt this expansive reading of *Powell* here because, as noted above, the plurality expressly declined to extend the reach of *Robinson* to protect any kind of conduct, whether or not it is 'involuntary' or 'occasioned by compulsion.'"  *Powell*, 392 U.S. at 533-34 (citing the dissenting opinion, 392 U.S. at 559 n.2).

Though *Powell* did not set forth a constitutional rule that involuntary conduct cannot be criminalized under *Robinson*, *Powell* did not foreclose the possibility that an individual could challenge a statute punishing conduct that was compelled by a disease or otherwise involuntary under the Cruel and Unusual Punishments clause if he could make a greater showing of compulsion or involuntariness of the prohibited conduct than was shown in *Powell*.  *See Powell*, 392 U.S. at 521-25 (criticizing the inadequacy of the trial record and the findings of the trial court).  The *Powell* plurality noted the absence of agreement among medical professionals about alcoholism as a disease and the absence in the record of any distinction between the 'loss of control' once an alcoholic has started drinking and the 'inability to abstain' from drinking in the first place.  *Id*. at 522-25.  Upon review of the trial record, which reflected the testimony of only one state witness and three defense witnesses, the *Powell* plurality found that "[t]he trial hardly reflects the sharp legal and evidentiary clash between fully prepared adversary litigants which is traditionally expected in major constitutional cases."  *Id*. at 522.

The D.C. Circuit has recognized that "*Powell* at least contemplates a heavy burden of proof" for a criminal defendant who claims that he cannot control his conduct because of a compulsion.  *Watson v. United States*, 439 F.2d 442, 451 (D.C. Cir. 1970) (en banc), *overruled on other grounds by Marshall v. United States*, 414 U.S. 417, 422 (1974).  In *Watson*, the D.C. Circuit considered a heroin addict's *Robinson* challenge to his conviction for drug possession.  The en banc court of appeals affirmed the conviction after determining that the record was insufficient to support an Eighth Amendment challenge to punishing a narcotics addict for possession of narcotics for his own personal use.  *Watson* recognized, however, that "the Supreme Court in *Powell* has left this matter of criminal responsibility, as affected by the Eighth Amendment, in a posture which is, at best, obscure.  The majority in that case unmistakably recoiled from opening up new avenues of escape from criminal accountability by reason of the compulsions of such things as alcoholism and,

1    presumably, drug addiction - conditions from which it is still widely assumed, rightly or wrongly,

2    that the victim retains some capacity to liberate himself."  439 F.2d at 451.

3        Although Plaintiffs present compelling circumstances that call for review and

4    reconsideration of the ordinances at issue, the Court holds that Plaintiffs do not state an Eighth

5    Amendment claim under clearly established federal law.  *Powell* declined to recognize an as-

6    applied challenge to a conduct-based ordinance based on an inability to control the conduct.  Nor

7    did *Powell* adopt a test for distinguishing involuntary conduct from voluntary conduct to bring a

8    status-based challenge under *Robinson*.  The Court agrees with the analysis of *Powell* expressed in

9    an earlier case brought in this district, *Joyce v. City and County of San Francisco*, 846 F. Supp. 843

10   (N.D. Cal. 1994), where the court denied the motion for a preliminary injunction brought by a class

11   of homeless persons challenging San Francisco's Matrix Program which included measures that

12   banned sleeping, camping or lodging in public parks.  In *Joyce*, the court found that the plaintiffs

13   had not demonstrated a probability of success on the merits, after questioning the extension of

14   *Powell* to protect acts derivative of one's status and determining that *Powell* did not recognize

15   homelessness as a status protected by the Eighth Amendment.  846 F. Supp. at 856-58.  *Joyce*

16   expressed concerns that extending the Eighth Amendment to challenge the camping ordinances

17   "would be an untoward excursion by this Court into matters of social policy to accord to

18   homelessness the protection of status."  *Id*. at 858.  The *Joyce* court also expressed concerns about

19   the ramifications of providing constitutional protection to any condition over which a showing

20   could be made that the defendant had no control.  *Id*.  The Court shares those concerns here and

21   concludes that the Eighth Amendment does not reach Plaintiffs' First Cause of Action.

22       Relying primarily on Justice White's concurring opinion, some courts have construed

23   *Powell* to recognize as-applied Eighth Amendment challenges to laws that proscribe conduct by

24   homeless persons that were shown to be involuntary or out of their control.  In *Pottinger v. City of*

25   *Miami*, 810 F. Supp. 1551, 1563 (S.D. Fla. 1992), *remanded for limited purposes*, 40 F.3d 1155

26   (11th Cir. 1994), *and directed to undertake settlement discussions*, 76 F.3d 1154 (1996), the district

27   court recognized that "[a]lthough the law is well-established that a person may not be punished for

28   involuntary status, . . . the *Powell* plurality was not confronted with a critical distinguishing factor

United States District Court
For the Northern District of California

that is unique to the plight of the homeless plaintiffs in this case: that they have no realistic choice but to live in public places."  Based on evidence that Miami had insufficient homeless shelter space and a determination that the homeless class members rarely choose to be homeless, the district court held that "arresting the homeless for harmless, involuntary, life-sustaining acts such as sleeping, sitting or eating in public is cruel and unusual."  *Id.*  In *Johnson v. City of Dallas*, 860 F. Supp. 344, 350 (N.D. Tex. 1994), *reversed on other grounds*, 61 F.3d 442 (5th Cir. 1995), the district court reasoned that because homeless shelters could not accommodate the demand, the act of sleeping in public was not a function of choice.  Reasoning that "being does not exist without sleeping," the district court held that the ordinance that prohibited sleeping in public was unconstitutional for punishing the homeless based on their status which forced them to be in public. *Id.*

Other courts that have recognized a basis for an Eighth Amendment challenge to an ordinance proscribing allegedly involuntary conduct nevertheless denied relief to homeless litigants after finding the record insufficient to support the element of involuntariness.  In *Joel v. City of Orlando*, 232 F.3d 1353, 1362 (11th Cir. 2000), the plaintiffs alleged that the camping ordinances punished homeless individuals' involuntary conduct as a result of their status of being homeless. The court of appeals affirmed summary judgment for the city based on unrefuted evidence that the city's homeless shelter had available space, concluding that the camping ordinance therefore did not criminalize involuntary behavior.  *Id.*

In *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069 (1995), the state supreme court reversed the court of appeal's ruling that the ordinance banning camping in public areas violated the Eighth Amendment, recognizing that *Powell* did not deal with "the question of whether certain conduct cannot constitutionally be punished because it is, in some sense, 'involuntary' or 'occasioned by a compulsion.'"  9 Cal. 4th at 1105 (quoting *Powell*, 392 U.S. at 533).  Noting that "the Supreme Court has not held that the Eighth Amendment prohibits punishment of acts derivative of a person's status," *Tobe* further questioned whether homelessness was even a "status" protected from criminalization under *Robinson*.  *Id.* (citing *Joyce*, 846 F. Supp. at 857).  The court cited *Joyce* to list possible factors to define status "'such as the involuntariness of the acquisition of that quality

1   (including the presence or not of that characteristic at birth) and the degree to which an individual

2   has control over that characteristic.'" *Id.*  Without deciding the issues whether homelessness was a

3   status protected by the Eighth Amendment or whether *Robinson* prohibited laws against involuntary

4   conduct that derived from the status of homelessness, the *Tobe* court concluded that the plaintiffs

5   had not established that they lacked "alternatives to either the condition of being homeless or the

6   conduct that led to homelessness and to the citations." *Id.  See also United States v. Black*, 116

7   F.3d 198, 201 (7th Cir. 1997) (affirming conviction for receiving, possessing and distributing child

8   pornography over Eighth Amendment objection for punishing status of being a pedophile absent

9   showing that the charged conduct was "involuntary or uncontrollable").

10          In line with the district court holdings of *Pottinger* and *Johnson*, Plaintiffs urge the Court to

11  follow *Anderson v. City of Portland*, 2009 WL 2386056 (D. Or. July 31, 2009), in which the district

12  court denied the defendants' motion to dismiss the putative class action of homeless persons who

13  alleged that Portland's camping ordinances criminalized the status of homelessness in violation of

14  the Eighth Amendment.  There, the court held that the plaintiffs adequately stated a claim under the

15  Eighth Amendment on their as-applied challenge.  *Id*. at \*7.  Declining to adopt the majority

16  opinion of *Jones*, the *Anderson* court held that the Eighth Amendment limitation on criminalizing

17  mere status did not depend "*solely* on whether the challenged law or its enforcement targets

18  derivative, 'involuntary' conduct," but that the determination depended on other factors such as

19  "the nature of the prohibited conduct," that is, "whether and to what degree the City's enforcement

20  of the anti-camping and temporary structure ordinances criminalizes 'conduct that society has an

21  interest in preventing.'"  *Id*. at \*7 (quoting *Jones*, 444 F.3d at 1139 (Rymer, J., dissenting).  The

22  Court declines to follow *Anderson* on the ground that neither the Supreme Court nor the Ninth

23  Circuit has recognized the Eighth Amendment to protect involuntary conduct, much less announced

24  a test to weigh the involuntariness of the targeted conduct or the nature of that prohibited conduct.

25          Defendants urge the Court to adopt the reasoning of the Eastern District of California in

26  *Lehr*, where the district court was asked to review an anti-camping ordinance enacted for the

27  purpose of maintaining "'streets, parks and other public and private areas within the city in a clean,

28  sanitary and accessible condition and to adequately protect the health, safety and public welfare of

**United States District Court**
For the Northern District of California

the community.'" *Lehr*, 624 F. Supp. 2d at 1225 (quoting Sacramento City Code § 12.52.010).
Though the Court is presented with the Eighth Amendment issue here in a different procedural
posture than in *Lehr*, which was decided on a motion for summary judgment after the parties had
developed the facts, the Court agrees with the holding of *Lehr* on the issue whether *Robinson* and
*Powell* limited the Eighth Amendment to prohibit laws criminalizing status and did not extend
Eighth Amendment protection to involuntary conduct.

In *Lehr*, homeless individuals and several homeless advocacy entities alleged that
enforcement of the Sacramento ordinances that prohibited camping, as applied to homeless
individuals, constituted cruel and unusual punishment by effectively punishing them for the
involuntary condition of being homeless.  624 F. Supp. 2d at 1225.  The *Lehr* plaintiffs produced an
expert on the population of homeless people in Sacramento who opined that homeless individuals
rarely choose to be homeless and that homelessness is due to factors beyond their control, such as
poverty, social isolation, mental and physical illness and disability, combined with alcoholism and
other addictions.  624 F. Supp. 2d at 1222.  The *Lehr* plaintiffs also produced evidence that shelters
in Sacramento could not accommodate all the homeless each night, estimating that Sacramento
provides about 1500 emergency shelter and transitional beds, leaving over 1200 individuals without
shelter on any night.  *Id.*  Despite this showing, the district court granted the defendants' motion for
summary judgment on the plaintiffs' Eighth Amendment claim on the ground that *Powell* did not
extend *Robinson* to protect conduct that is derivative of one's homeless status.  624 F. Supp. 2d at
1234.  The *Lehr* court disagreed with the *Jones* majority opinion and adopted the *Jones* dissent
which reasoned that "'neither the Supreme Court nor any other circuit court of appeals has ever
held that conduct derivative of a status may not be criminalized . . . [or] that status plus a condition
which exists on account of discretionary action by someone else is the kind of "involuntary"
condition that cannot be criminalized . . . .'"  *Id*. at 1232 (quoting *Jones*, 444 F.3d at 1139 (Rymer,
J., dissenting)).

The *Lehr* court concluded on alternative grounds that even if the holding of the *Jones*
majority were sound, the Sacramento ordinance was much less restrictive than the Los Angeles
ordinance held unconstitutional in *Jones*, which prohibited anyone from merely sitting, lying, or

sleeping on any street, sidewalk or other public way.  *Lehr*, 624 F. Supp. 2d at 1231 n.5 (citing *Jones*, F.3d at 1123).  *Lehr* further noted that the *Jones* majority distinguished municipal ordinances that were less restrictive than the Los Angeles ordinance to avoid criminalizing the status of homelessness by prohibiting standing or lying in a public way only when it obstructs pedestrian or vehicular traffic, prohibiting camping on a public way, limiting the hours of enforcement or setting clearly defined and limited zones.  *Id.*  Plaintiffs argue that *Lehr* is distinguishable from the present action because the Sacramento ordinance at issue there defined its terms narrowly by proscribing sleeping outdoors with particular camping equipment, thus targeting particular conduct.  Doc. No. 146 at 21 (citing *Lehr*, 624 F. Supp. 2d at 1225).  Plaintiffs also point out that the Sacramento ordinance in *Lehr* included a statement of purpose absent from the Arcata ordinances at issue here. Plaintiffs contend that the broad reach of the Arcata ordinance is similar to the Los Angeles ordinance reviewed in *Jones*.  Having concluded as a legal matter that the Eighth Amendment does not protect Plaintiffs against enforcement of ordinances that criminalize involuntary conduct, the Court declines to reach the sufficiency of Plaintiffs' factual allegations.  Defendants' argument that Plaintiffs lack standing to challenge Section 10004 on the ground that Plaintiffs do not allege that Defendants enforced Section 10004 against Plaintiffs during the relevant time period is thus rendered moot.  Doc. No. 142 at 11.

Because Sections 10004 and 10006 proscribe conduct, not status, Plaintiffs' facial challenges fail to state a claim under *Robinson* and *Powell*.  *See U.S. v. Ocegueda*, 564 F.2d 1363, 1366-67 (9th Cir. 1977) (federal statute prohibiting heroin users from the act of acquiring firearms did not violate *Robinson* ban on status crimes).  Furthermore, Plaintiffs' as-applied challenges fail to state a claim because under clearly established federal law, the Eighth Amendment does not prohibit ordinances that criminalize involuntary conduct such as sleeping or camping outside even though such conduct is beyond each Plaintiff's control because they are homeless.  Having considered the holdings of *Robinson* and *Powell*, as well as the opinions of other courts reviewing Eighth Amendment challenges by homeless individuals to camping ordinances, the Court recommends granting Defendants' motion to dismiss the First Cause of Action for failure to state a cognizable claim under the Cruel and Unusual Punishments Clause.

United States District Court
For the Northern District of California

**D.** **Second Cause of Action:  Equal Protection**

Plaintiffs allege that they have been "singled out for enforcement of laws that are not enforced against people who do not appear homeless" and that Defendants' selective enforcement of its "policies, practices and conduct" against the homeless violates the Equal Protection Clause of the Fourteenth Amendment.  Doc. No. 140 ¶¶ 65, 66.  Plaintiffs allege that Defendants' policies and actions lack a rational relationship to any legitimate state interest and that these policies were adopted and implemented with the intent to harm and disadvantage homeless persons in the City of Arcata.  *Id.* ¶ 65.  Construing the allegations of selective enforcement and discriminatory intent in the light most favorable to Plaintiffs, Defendants' motion to dismiss the Equal Protection Clause should be denied.

The Equal Protection Clause "commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *Id.*  Selective enforcement of laws that are neutral on their face is not a denial of equal protection "unless there is shown to be present in it an element of intentional or purposeful discrimination."  *Snowden v. Hughes*, 321 U.S. 1, 8 (1944).

In addition to Sections 10004 and 10006, Plaintiffs challenge the prohibition on sitting or lying on sidewalks under Section 4560:

> **Sec. 4560.  Sitting or lying on public sidewalks.**
> A.    Prohibition.  No person shall sit or lie down upon a public sidewalk, curb or street in the following areas:
> 1.    The Downtown Business District, defined as that area bordered by 7th Street to the south, 11th Street to the north, J Street to the west, and Highway 101 to the east.  The bordering streets and their adjacent sidewalks are considered to be within the restricted area;
> 2.    Beginning at 11th Street, extending northward from the westerly side of H Street and Highway 101 to Sunset Avenue, inclusive of sidewalks, and additionally including the 18th Street bridge and pathway crossing Highway 101 from G Street to L.K. Wood Blvd.

B.   Exceptions.  The prohibitions of Subsection A shall not
apply to any person or persons:
1.   Who is sitting or lying down on a public sidewalk
due to a medical emergency;
2.   Who, as the result of a disability, utilizes a
wheelchair, walker, or similar device to move about
the public sidewalk; or
3.   Who is standing or sitting on the curb or portion of
any sidewalk or street while attending or viewing
any parade, festival, performance, rally,
demonstration, meeting or similar event conducted
in accordance with this Code or for which an
appropriate permit has been duly issued by City.

Arcata Municipal Code, Title IV, Ch. 2, Art. 9 § 4560 (recodified as § 4260 by Ordinance 1399, eff. 4/16/2010).  Section 4560 is identified in the Second Amended Complaint.  Doc. No. 140 ¶¶ 2, 19.

Plaintiffs do not contend that homelessness is a suspect class calling for a heightened standard of review.  Rather, Plaintiffs contend that the ordinances at issue were adopted and implemented with a discriminatory purpose.  To support this contention, Plaintiffs allege that Mr. Ashbaucher was told by Arcata police officers that he could not sleep outside in Arcata because he was homeless and that he was told to leave parts of the city because he carried his possessions in a shopping cart.  Doc. No. 140 ¶¶ 23, 24.

Defendants assert that enforcement of the ordinances are rationally related to legitimate government interests.  Citing *Lehr*, Defendants contend that Section 4560, which prohibits sitting or lying on a public sidewalk in the business district, is rationally related to public health and safety concerns over the rights of the public to use and access streets and sidewalks.  Plaintiffs counter that Section 4560 does not target obstruction of city sidewalks, and that another provision, Section 4570, specifically addresses obstruction of movement in public ways.  Section 4570, recodified as Section 4270, prohibits occupying "any portion of a public street, sidewalk, curb or other public place so as to obstruct or interfere with the flow of pedestrian or vehicular traffic" except for viewing a parade or other authorized event.  Arcata Municipal Code Title IV, Ch. 2, Art. 9 § 4270 (eff. 4/16/2010).  Plaintiffs further allege that homeless people in the business district are asked to "move along" whereas people who do not appear homeless are not.  Doc. No. 140 ¶ 19.  Similarly, Defendants assert legitimate interests in enforcing Arcata's camping ordinance, Section 10004, because such enforcement is rationally related to address crime, sanitation, aesthetics and safety.

United States District Court
For the Northern District of California

1   Doc. No. 147 at 16-17.  Plaintiffs do not appear to challenge the legitimacy of such concerns, but

2   allege that the ordinances were motivated by a discriminatory purpose.

3       Defendants further argue that the language of the ordinances do not evince an intent to

4   discriminate against a particular group.  Doc. No. 142 at 21.  The absence of such language does

5   not foreclose an equal protection claim.  Discriminatory intent may be shown through evidence of

6   the city council's motives for passing the ordinances at issue.  *See Cleburne Living Center*, 473

7   U.S. at 436-37, 448-50 (reviewing district court's findings concerning the city's motivation for

8   requiring a special use permit for a home for the mentally retarded).  In *Cleburne Living Center*, the

9   defendant municipality enforced a zoning ordinance to require the plaintiffs to apply for a special

10  use permit for a proposed group home for the mentally retarded; following a public hearing on the

11  permit, the city council denied the permit.  Applying rational basis review, the Supreme Court held

12  that the permit requirement "appears to us to rest on an irrational prejudice against the mentally

13  retarded," and invalidated the zoning ordinance as applied to the proposed group home.  *Id*. at 450.

14  The Supreme Court noted that "mere negative attitudes, or fear, unsubstantiated by factors which

15  are properly cognizable in a zoning proceedings, are not permissible bases for treating a home for

16  the mentally retarded differently from apartment houses, multiple dwellings, and the like."  *Id*. at

17  448.  Here, Plaintiffs' allegations that the ordinances at issue are selectively enforced against

18  homeless individuals are sufficient to state a plausible claim for relief under the Equal Protection

19  Clause.  Defendants "may not avoid the strictures of that Clause by deferring to the wishes or

20  objections of some fraction of the body politic."  *Id.*

21      Accepting as true Plaintiffs' allegation that Defendants have targeted the homeless in

22  adopting and enforcing the ordinances, the Court recommends that the motion to dismiss the Equal

23  Protection claim be denied to permit "plaintiffs to rebut the facts underlying defendants' asserted

24  rationale for a classification, to show that the challenged classification could not reasonably be

25  viewed to further the asserted purpose" or to show that Defendants' purported rational basis for

26  their acts "is a pretext for an impermissible motive."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580,

27  590-91 (9th Cir. 2008).

28

**E.     Third Cause of Action:  Vagueness and Overbreadth Challenges**

Plaintiffs allege that Sections 10004, 10006, and 4560 are unconstitutionally vague because the ordinances do not clearly indicate what conduct is prohibited or what punishment may be imposed, and allege that the ordinances grant excessive discretion to law enforcement, allowing for selective enforcement against homeless people such as Plaintiffs.  Doc. No. 140 ¶ 68.  Plaintiffs further allege that the ordinances are overbroad as applied to Plaintiffs because they reach conduct beyond the City's police power.  *Id.*  Plaintiffs allege that the ordinances have been enforced against each of them.  *Id.* ¶ 69.

**1.     Vagueness**

In *Kolender v. Lawson*, the Supreme Court articulated the standard for reviewing vagueness challenges under the Due Process Clause:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.  [Citations omitted.]  Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine-the requirement that a legislature establish minimal guidelines to govern law enforcement."  Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

*Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574-75 (1974)).

In *Kolender*, the Supreme Court considered a facial challenge to a criminal statute requiring persons who loiter or wander on the streets to provide a "credible and reliable" identification.  The Supreme Court determined that the statute contained no standard for determining what a suspect has to do in order to satisfy the requirement to provide a "credible and reliable" identification.  461 U.S. at 358.  Noting that the statute "vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute and must be permitted to go on his way in the absence of probable cause to arrest," the Supreme Court concluded that the statute "is unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    describe with sufficient particularity what a suspect must do in order to satisfy the statute." *Id.* at

2    358, 361.

3         Here, Plaintiffs raise both facial and as-applied challenges to the ordinances on vagueness

4    grounds.  Doc. No. 146 at 25.  As noted earlier, a violation of any of these ordinances amounts to an

5    infraction punishable by fine under the Arcata Municipal Code.  Arcata Municipal Code Title I, Ch.

6    3, Section 1200.  The parties did not address the issue whether the Code imposes criminal or civil

7    penalties for infractions.  For purposes of the present motion, however, the court proceeds with the

8    void-for-vagueness analysis under the *Kolender* standard applicable to criminal statutes.

9         Defendants contend that the ordinances do not invite arbitrary or discriminatory

10   enforcement because the proscribed conduct is either commonly understood or defined in the

11   ordinance.  Referring to the prohibition of camping on or overnight use of public grounds contained

12   in Section 10004, Defendants contend that "camping" has a common sense meaning and does not

13   require detailed instructions for enforcement.  Doc. No. 147 at 19 (citing *Joyce*, 846 F. Supp. at

14   862-63; *United States v. Thomas*, 864 F.2d 188, 196 (D.C. Cir. 1988) (quoting *Community for*

15   *Creative Non-Violence v. Watt*, 703 F.2d 586, 610 (Wilkey, J., dissenting), *rev'd on other grounds*,

16   *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984)); and *Tobe*, 9 Cal. 4th at

17   1108).  Defendants also point out that the ordinance itself define camping as "temporarily living or

18   occupying an area in the outdoors."  Plaintiffs argue that Section 10004 lacks adequate definitions

19   for its terms and minimal guidelines for law enforcement, in contrast to the ordinances that were

20   scrutinized in the cases cited by Defendants which described in more detail the specific conduct

21   that was being proscribed and provided boundaries of prohibited behavior.  Doc. No. 146 at 26.

22        The cases cited by the parties provide guidance about the level of reasonable specificity in

23   defining proscribed conduct that is required by the Due Process Clause.  In *Joyce*, the camping

24   ordinance proscribed construction of any "building, structure, tent, or any other thing in any park

25   that may be used for housing accommodations or camping," and the defendants presented evidence

26   that the city's police officers were educated on proper enforcement such that merely lying or

27   sleeping on or in a bedroll did not constitute a violation.  846 F. Supp. at 861.  *See also Joel v. City*

28   *of Orlando*, 232 F.3d 1353, 1356, 1360-61 (11th Cir. 2000) (holding that camping ordinance was not

1    unconstitutionally vague where the city issued guidelines to police for enforcing and interpreting

2    the ordinance).

3        In *Thomas*, two nuclear protesters challenged their conviction for impermissibly camping in

4    Lafayette Park under United States Park Service regulations.  The D.C. Circuit found that the Park

5    Service camping regulation which defined camping as "the use of park land for living

6    accommodation purposes" also listed several indicia of "camping," such as making preparations to

7    sleep, storing personal belongings, making a fire, using tents or shelter or other structure or vehicle

8    for sleeping or digging or cooking.  864 F.2d at 190, 197.  The court of appeals determined that

9    these indicia of camping gave the activists fair notice that the regulation applied to their continuous

10   presence in the park.  *Id.* at 197.  *Thomas* further held that the terms of the regulation did not confer

11   undue discretion upon the park officials because the concept, definitions and indicia of camping

12   contained in the regulation described "reasonably precise boundaries of the prohibited behavior."

13   *Id.* at 199.

14       In *Tobe*, the state supreme court held that the Santa Ana camping ordinance was sufficiently

15   definite to provide adequate notice of the conduct proscribed and provided sufficiently definite

16   guidelines to prevent arbitrary and discriminatory enforcement.  9 Cal. 4th at 1108.  The ordinance

17   prohibited anyone from camping, occupying camp facilities or using camp paraphernalia in any

18   street or public area; it also defined the terms "camp," "camp facilities," and "camp paraphernalia"

19   which included tarpaulins, cots, beds, sleeping bags, hammocks or non-city designated cooking

20   facilities."  *Id.* at 1081.  The superior court struck the definition of "camp" as "to live temporarily in

21   a camp facility," which was subsequently amended accordingly.  *Id.* at 1081-82 and n.4.  That

22   definition was not at issue before the state supreme court, but Plaintiffs note that the definition of

23   camping that was stricken from the Santa Ana ordinance is similar to the definition used in Section

24   10004: "temporarily living or occupying an area in the outdoors."  Doc. No. 146 at 27.

25       Plaintiffs allege that Ms. Starr was awoken by Arcata police while she was sleeping in her

26   car.  Doc. No. 140 ¶ 25.  As alleged, Section 10004 is vague as to whether individuals such as Ms.

27   Starr who sleep in their cars, without commonly recognized camping equipment such as tents, lean-

28   tos or sleeping bags would violate that ordinance.  Furthermore, Plaintiffs have sufficiently alleged

United States District Court
For the Northern District of California

a facial challenge to Section 10004 on the ground that the ordinance "encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute." *Kolender*, 461 U.S. at 358, 361. As such, Plaintiffs have sufficiently alleged as-applied and facial challenges to Section 10004 as unconstitutionally vague.

Regarding Section 10006, Defendants contend that it "specifically proscribes using public grounds without a permit, except for 'normal leisure' and 'recreational use' when such use does not preclude or discourage similar use by others." Doc. No. 147 at 19. Section 10006 prohibits any individual or group from using public buildings or grounds without first obtaining a permit, except for normal leisure and recreational use that does not preclude or discourage similar use by others, and it limits "large group activities, as determined by the City Manager or his/her designee" to three public areas. Plaintiffs contend that Section 10006 is unconstitutionally vague under *United States v. Powell*, 423 U.S. 87, 92 (1975). Plaintiffs argue that by forbidding use of public grounds except for "normal" leisure and recreational use that does not discourage others, without defining the parameters what such discouraging conduct would be, and by leaving the determination of a "large group activity" to the discretion of the City Manager, Section 10006 "forbids no specific or definite act" and "leaves open . . . the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against." Doc. No. 146 at 27. At oral argument, Plaintiffs further argued that the ordinance does not set forth a procedure for obtaining a permit for using public grounds, if one would be required under Section 10006, making compliance impossible. Defendants responded that Plaintiffs have not alleged that they ever attempted to seek a permit and were denied. Plaintiffs' vagueness challenge, however, goes to the sufficiency of the ordinance such that ordinary people can understand what conduct is prohibited, including the process by which a member of the public could obtain a permit to satisfy Section 10006, and whether the ordinance is so vague as to encourage arbitrary and discriminatory enforcement. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972).

Examining Plaintiffs' vagueness challenges "in the light of the facts of the case at hand," *United States v. Powell*, 423 U.S. at 92, the Court notes that Plaintiffs allege that the early morning of April 25, 2007, four days into the encampment organized to raise awareness of the concerns of

1   the homeless, Plaintiffs were awakened by Arcata police who requested that encampment members

2   produce identification and sign a citation for violating Section 10006.  Doc. No. 140 ¶ 39.  Mr.

3   Miller "attempted to produce identification and sign a citation but did not stand up" out of fear that

4   he would be forcibly removed from the park.  Doc. No. 140 ¶ 40.  Ms. Starr and Mr. Ashbaucher

5   did not have identification and were arrested.  In light of these allegations, Plaintiffs have

6   sufficiently alleged an as-applied challenge to Section 10006 on vagueness grounds.

7        Concerning Section 4560, Plaintiffs contend that the prohibition on sitting or lying upon a

8   public sidewalk, curb or street in the downtown business district lacks any guidelines differentiating

9   between sitting or lying on the sidewalk when obstructing pedestrian flow and when it is harmless.

10  Doc. No. 146 at 28-29.  In *Roulette v. City of Seattle*, 97 F.3d 300, 306 (9th Cir. 1996), the Ninth

11  Circuit considered a due process challenge to a Seattle ordinance that prohibited sitting or lying on

12  sidewalks in commercial areas between 7:00 am and 9:00 pm.  The ordinance did not restrict sitting

13  or lying in public parks or plazas nor sitting on sidewalks in the commercial areas at night.  97 F. 3d

14  at 302.  The Ninth Circuit noted that the city asserted a legitimate interest in protecting pedestrian

15  safety and economic vitality from individuals blocking the sidewalks.  *Id*. at 306.  Affirming

16  summary judgment for the city, the Ninth Circuit rejected the plaintiffs' facial due process

17  challenge because the evidence in the record demonstrated that the statute would be constitutional

18  as applied in a large fraction of cases.  *Id*. at 306.

19       The Seattle ordinance reviewed in *Roulette* contained specific provisions limiting the

20  restrictions on sitting or lying on a public sidewalk, including parameters around the prohibited

21  time and locations.  Unlike the Seattle ordinance, Section 4560 of the Arcada Municipal Code does

22  not limit the time when the ordinance can be enforced.  Section 4560 does, however, set forth

23  geographical restrictions on where the ordinance can be enforced, limiting the prohibition on sitting

24  or lying on sidewalks to the Downtown Business District, with defined boundaries, and a defined

25  area from "11th Street extending northward from the westerly side of H Street and Highway 101 to

26  Sunset Avenue" and the 18th Street bridge "crossing Highway 101 from G Street to L.K. Wood

27  Blvd."  Section 4560 also defines certain exceptions to enforcement, such as medical emergency,

28  disability, or parade viewing.  Arcata Municipal Code Title IV, Ch. 2, Section 4560 (B) (recodified

as Section 4260(B)).  Though some provisions are distinguishable from the Seattle ordinance in *Roulette*, Section 4560 is not so vague on its face such that it either fails to give fair notice of what conduct is proscribed or encourages arbitrary and erratic arrests.  *Kolender*, 461 U.S. at 357.  Defendants' motion to dismiss Plaintiffs' facial challenge to Section 4560 on vagueness grounds should therefore be granted under *Roulette*, 97 F.3d at 306.  As Defendants point out, the operative complaint fails to allege any facts in support of Plaintiffs' as-applied vagueness challenge to Section 4560 other than a cursory allegation that the challenged ordinances have been enforced against each Plaintiff.  Doc. No. 140 ¶ 69.  The Court therefore recommends that the as-applied vagueness challenge to Section 4560 in the Third Claim for Relief be dismissed with leave to amend.

### 2.      Overbreadth

Plaintiffs also challenge Arcata Municipal Code Sections 10004, 10006, and 4560 as overbroad and seek a declaration finding these code sections unconstitutionally overbroad.  Doc. No. 140 ¶ 68 and Prayer for Relief ¶ 8.  Overbreadth challenges, however, are limited to First Amendment claims.  *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) ("the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights"); *Broadrick v. Oklahoma*, 413 U.S. 601, 612-15 (1973).  Plaintiffs contend that the Supreme Court has recognized as-applied overbreadth challenges for constitutionally protected rights other than First Amendment rights, citing *Troxel v. Granville*, 530 US 57, 67 (2000).  Doc. No. 146 at 26.  *Troxel* recognized a due process challenge to a statute governing child visitation, but did not purport to extend judicial review of statutes for overbreadth beyond the realm of the First Amendment.  Here, Plaintiffs do not raise any First Amendment claims in their Second Amended Complaint.  Therefore, the Court recommends that Plaintiffs' overbreadth challenges be dismissed with prejudice.  *Betancourt v. Bloomberg*, 448 F.3d 547, 554 (2d Cir. 2006).

### F.      Fourth Cause of Action:  Unlawful Seizure and Due Process Violation

Plaintiffs allege that Defendants confiscated and/or destroyed Plaintiffs' property in violation of their right against unreasonable search and seizure and in violation of their right to due

28

United States District Court
For the Northern District of California

1    process.  Doc. No. 140 ¶¶ 71-72.  Plaintiffs allege that their property has been seized and not

2    returned, or, in some cases, destroyed.  *Id.* ¶ 72.

3           Defendants contend that Plaintiffs claim for unlawful seizure fails to state a claim because

4    Plaintiffs allege that their property was seized incident to their arrest, and the seizure was therefore

5    proper.  Doc. No. 142 at 25-26.  Plaintiffs counter that even if the seizure occurred during a lawful

6    arrest, their due process claim alleges that Defendants not only seized the property but failed to

7    return and even destroyed the property they seized.  Doc. No. 140 ¶¶ 37, 48, 49, 52.  Plaintiffs also

8    allege that Defendants have attempted to seize and destroyed Mr. Miller's property by slashing

9    open his tent and leaving his possessions exposed to rain, and by trying to confiscate his property

10   while it was lying outdoors on four different occasions.  *Id.* ¶¶ 26, 28.  These allegations of "some

11   meaningful interference with an individual's possessory interest in that property" are sufficient to

12   state a claim for unlawful seizure of property under the Fourth and Fourteenth Amendments.

13   *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

14          Defendants further contend that the existence of post-deprivation remedies bars Plaintiffs'

15   claims that property was not returned.  Doc. No. 142 at 25 (citing *Hudson v. Palmer*, 468 U.S. 517,

16   533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds by Daniels*

17   *v. Williams*, 474 U.S. 327 (1986); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994)).  Under the

18   holding of *Sanders v. Kennedy*, 794 F.2d 478, 482 (9th Cir. 1986), however, post-deprivation

19   remedies do not cure due process violations if the deprivation is conducted pursuant to a policy.

20   Plaintiffs' allegations raise a question of fact whether Arcata police have a policy of destroying

21   property confiscated from homeless individuals such as Plaintiffs.  In *Sanders*, the Ninth Circuit

22   recognized that the *Hudson* and *Parratt* analysis for availability of post-deprivation procedures is

23   limited to random, unauthorized conduct by state officials:

24          The availability of a state tort remedy does not bar due process claims
             brought under section 1983 in cases where a plaintiff is challenging an
25           established state procedure. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422,
             435-36 (1982).  The *Parratt* analysis only applies in cases involving random
26           and unauthorized acts.  *See, e.g., Rutledge v. Arizona Board of Regents*, 660
             F.2d 1345, 1352 (9th Cir. 1981) (*Parratt* analysis applicable to a claim that
27           a coach assaulted a football player at a state university), *aff'd on other*
             *grounds sub nom. Kush v. Rutledge*, 460 U.S. 719 (1983).  We have recently
28           affirmed the above principles, and defined their scope, in a trilogy of cases
             decided en banc.  *See Haygood v. Younger*, 769 F.2d 1350, 1359 (9th Cir.

United States District Court
For the Northern District of California

1    1985) (en banc) (*Logan*, not *Parratt*, applies in a case involving a wrongful
     deprivation of liberty resulting from affirmatively enacted or de facto
2    policies, practices, or customs), *cert. denied sub nom. Cranke v. Haygood*,
     478 U.S. 1020 (1986); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir.
3    1985) (en banc) (*Parratt* inapplicable to cases involving deliberate,
     considered, planned or prescribed conduct by state officials, whether or not
4    such conduct is authorized); *Bretz v. Kelman*, 773 F.2d 1026, 1031-32 (9th
     Cir. 1985) (en banc) (*Parratt* is directed at minor infractions of prisoners'
5    interests, when the alleged conduct is random and unauthorized; the *Parratt*
     analysis is inapplicable to a claim of conspiracy which, by definition, cannot
6    be a random act).

7    *Sanders*, 794 F.2d at 482.

8         The operative complaint alleges that Defendants' intentional acts resulted in substantial

9    damage to Plaintiffs' property, and unlawfully deprived Plaintiffs of their possessory interest in that

10   property.  Doc. No. 140  ¶¶ 26, 28, 37, 44, 48, 49, 52.  Plaintiffs contend that these acts were

11   conducted by law enforcement officers and employees of the City of Arcata pursuant to an official

12   policy, practice, and custom.  *Id.*  ¶¶ 26, 28, 37, 44, 47.   Because these allegations, which must be

13   taken as true, show that Plaintiffs' due process claims are not directed at random and unauthorized

14   conduct, the unlawful seizure claims are not barred under *Parratt*.  *Sanders*, 794 F.2d at 482.

15        Defendants offer declarations that purport to establish "that the property seized was

16   inventoried and returned."  Doc. No. 142 at 26 n.8; Chapman Decl., Doc. Nos. 107-115; Lovie

17   Decl., Doc. No. 106.  Such extrinsic evidence of facts that are subject to reasonable dispute may not

18   properly be considered on a motion to dismiss.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89

19   (9th Cir. 2001).  Construing the allegations in the light most favorable to Plaintiffs, the Court

20   recommends that Defendants' motion to dismiss the Fourth Cause of Action for unlawful

21   confiscation and destruction of property be denied.

22

23   **G.**   ***Monell* Liability**

24        Defendants contend that the claims should be dismissed against them because under *Monell*

25   *v. Dept. of Social Services of New York*, 436 U.S. 658 (1978), municipalities cannot be held liable

26   under § 1983 unless the municipality itself causes the constitutional violation at issue, as

27   *respondeat superior* liability does not attach under § 1983.  Doc. No. 142 at 16-17.  For the court to

28   determine whether a municipality is responsible for constitutional violations, Plaintiffs must show

that (1) Plaintiffs possessed a constitutional right of which they were deprived; (2) the municipality had a policy; (3) this policy amounts to deliberate indifference to the plaintiffs' constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Defendants do not dispute whether any particular policy was adopted, but contend that there has been no underlying constitutional violation. Doc. No. 147 at 7. Because the Second Amended Complaint adequately alleges constitutional violations, as discussed above, the Court recommends that Defendants' motion to dismiss the allegations on *Monell* grounds be denied.

## IV.  RECOMMENDATION

For the reasons set forth above, the Court recommends the following:

1.   granting Defendants' motion for involuntary dismissal of Plaintiffs Hernandez and Johnson from this action as to all defendants without prejudice;

2.   granting Defendants' motion to dismiss for failure to state a claim as to the First Cause of Action under the Eighth and Fourteenth Amendments;

3.   granting Defendants' motion to dismiss for failure to state a claim in the Third Cause of Action as to the vagueness challenge to Section 4560 with leave to amend the as-applied challenge to Section 4560 as unconstitutionally vague;

4.   granting Defendants' motion to dismiss for failure to state a claim as to the overbreadth challenge to all the ordinances at issue in the Third Cause of Action;

5.   denying Defendants motion to dismiss as to all other claims in the Second Amended Complaint;

6.   ordering the parties to meet and confer on the remaining claims and to consider whether to request a settlement conference or a stay of proceedings to allow the City of Arcata to amend the ordinances that are subject to Plaintiffs' challenges in this action;

7.   requiring Plaintiffs file a Third Amended Complaint that conforms to the district court's order following any decision on whether to stay the action.

Any party may file objections to this report and recommendation with the district judge within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. Proc. 72(b); Civil L.R. 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.


Dated:  August 19, 2010                                    _____
                                                                          NANDOR J. VADAS
                                                                          United States Magistrate Judge